WHITE & STREET TOWNSITE COMPANY v. J. NEILS LUMBER COMPANY.[1]

January 4, 1907.

Nos. 14,946—(88).

**Public Land—Forfeiture of Grant.**

Action to recover logs, or their value, which were cut and carried away from the land described in the complaint by the defendant in the spring of 1904. The land was originally a part of the swamp lands of the state. September 20, 1898, the state land commissioner selected and set apart the land for the state institutions. August 20, 1901, at a public sale, he sold the land to S., who made the advanced payment and received a receipt reciting the sale. The certificate of sale dated August 20, 1901, was delivered to him February 3, 1902. S. conveyed his interest in the land to W., who paid the balance due the state, and on January 17, 1903, conveyed the land to the plaintiff. August 2, 1904, the patent for the land was issued by the state, pursuant to the sale to S. This action was commenced May 7, 1904.

The state, by chapter 415, p. 964, Sp. Laws 1881, granted to the Little Falls & Dakota Railroad Company six sections of swamp land for each mile of road constructed by it within the time limited by the grant. On January 4, 1894, the company filed with the land commissioner a list of land, including the land in question, which it claimed it was entitled to by virtue of the grant. November 16, 1901, the governor of the state, purporting to act pursuant to chapter 193, p. 267, Laws 1901, included by mistake the land in a deed then made by him to the successor in interest of the Little Falls Company, the Northern Pacific Railway Company, which executed a deed of the land to B., who executed to the defendant a deed of the timber on the land.

[1] Reported in 110 N. W. 371.

*Held*, that the interest, if any, of the Little Falls. Company in .the land in question was, prior to its selection by the land commissioner, revested in the state, without further act or ceremony, by reason of the failure of the company to complete the. last section of thirty miles of its road within the time limited by the grant.

**Selection by the State.**

The selection of the land by the commissioner for the state institutions was valid; the land being a part of the swamp lands of the state.

**Conveyance by Governor Void.**

The deed of the governor, so far as it related to the land in question, was void, for the reason that he had no power to convey such land.

**Character of Land.**

The defendant cannot impeach the title of the plaintiff to the land by showing that it was, at the time it was sold to S., chiefly valuable for the timber thereon.

**Recovery for Logs Cut.**

The plaintiff is entitled to recover the logs cut and removed from the land by the defendants, although the patent for the land was not issued until after the commencement of this action.

Action in the district court for Beltrami county to recover certain logs or the sum of $1,500, and $100 for their detention. The case was tried before Spooner, J., and a jury, which rendered a verdict in favor of the plaintiff, and placed the value of the logs at $900. From an order granting a motion of the defendant in its favor notwithstanding the verdict, plaintiff appealed. Reversed, and judgment ordered for plaintiff.

*Henry Conlin, Gibbons & Torrance,* and *John P. Kyle,* for appellant.

*E. E. McDonald,* for respondent.

START, C. J.

The complaint herein alleged that the plaintiff was and is the owner of the Southeast quarter of the Northwest quarter, section 12, township 148, range 32, in the county of Beltrami; that between September 1, 1903, and May. 1 following, the defendant wrongfully entered upon the land and cut and carried away the timber standing thereon, to the amount of one hundred fifty thousand feet of logs, of the value of

100 M.—2.

$1,500, then the property of the plaintiff; and that the defendant wrongfully detains the same, to the plaintiff's damage in the sum of $1,500. The complaint demanded judgment for the recovery of the logs, or for their value if possession could not be had. The answer denied the allegations of the complaint and alleged that the defendant was the owner of the timber. The jury returned a verdict for the plaintiff, that it was the owner and entitled to the possession of the logs, which were of the value of $900, and that they were cut and removed from the land described in the complaint by the defendant. The defendant then made a motion for judgment in its favor notwithstanding the verdict or for a new trial. The trial court made its order for judgment in defendant's favor notwithstanding the verdict, and the plaintiff appealed from the order.

The evidence was sufficient to establish these facts:

On October 20, 1877, the land in question was patented to the state of Minnesota as swamp land. On March 3, 1881, the state, by chapter 415, p. 964, Sp. Laws 1881, granted to the Little Falls & Dakota Railroad Company, hereafter designated as the "Little Falls Company," to aid it in the construction of its railroad, six sections of swamp land of the state for each mile thereof to be selected from the swamp lands lying nearest the railroad line in the counties through which it should run, with the right, in case of a deficiency in such lands, to select other swamp lands of the state to make up the full quantity granted. This grant was upon the express condition that the Little Falls Company should commence the work of construction of its main line within one year and complete the same within three years after the making of the grant, and, in case any part of such main line should remain uncompleted at the expiration of three years, all the lands granted appertaining to the then uncompleted portions of such line should become forfeited to and become revested in the state without further act or ceremony. The grant also provided that, as often as any continuous section of road thirty miles in length should be completed to the satisfaction of the governor of the state, he should convey to the company a quantity of the granted lands equal to six sections for each mile of completed road. The Little Falls Company accepted the terms of the grant and completed two sections of its road, of thirty miles each, in accordance with the terms of the grant, for which it received, prior to the year

1901, a deed from the governor for 244,091.51 acres of land, which exceeded the amount of land it was entitled to for the completion of the two sections. It did not construct the third section of thirty miles of its road within the time limited, nor at all, except that it constructed twenty seven and seven-tenths miles thereof. There was not enough swamp land belonging to the state in the counties through which the line of railroad was located and constructed to satisfy the grant, and on January 4, 1894, the Little Falls Company filed in the office of the land commissioner of the state a list of swamp lands selected by it outside of such counties to fill the grant. This list contained the land described in the complaint, and, so far as it relates to such land, the list was never approved or rejected by the land commissioner, except in so far as the same was affected by the fact that in the year 1896 he disputed the right of the Little Falls Company, or the Northern Pacific Railway Company, as its successor, to receive more than six sections per mile for the full two sections of thirty miles of the railroad so constructed; also, except as the same was affected by chapter 193, p. 267, of the Laws of Minnesota for 1901; and, further, except so far as the same was affected by the selection of the land by the commissioner as hereinafter stated.

On September 20, 1898, the land commissioner, pursuant to the provisions of Laws 1865, p. 15, c. 5, selected and set apart the land here in question, with other lands, for the benefit of the educational and charitable institutions of the state. On August 20, 1901, the land commissioner, in the manner provided by statute, at a public sale of lands so selected, offered the land in question for sale and it was then sold to M. D. Stoner for $5 per acre; he being the highest bidder therefor. He then made the required advanced payment and received a receipt therefor in the usual form, which recited the sale of the land to him, and on February 3, 1902, the usual certificate of sale of the land, dated August 20, 1901, was delivered to him. The delay in issuing the certificate was due to the failure of the county auditor to promptly report the sale. Stoner assigned his certificate and interest in the land to A. A. White on May 1, 1902, and on September 6, 1902, the certificate and assignment were duly recorded in the office of the register of deeds of the proper county. The land was conveyed by White to the plaintiff before the commencement of this action and on January 17, 1903. Au-

gust 2, 1904, a patent for the land, duly recorded three days thereafter, was issued by the state to White. The Little Falls Company, on June 5, 1900, conveyed all its rights in and to its land grant to the Northern Pacific Railway Company. There was a controversy between the state and the Northern Pacific Railway Company as to the adjustment of this grant, but not as to the land in question. A compromise was made, as provided in chapter 193, p. 267, Laws 1901, approved April 10, 1901.

Prior to the passage of this act neither of the railroads had conveyed or contracted to convey the land in question, save that the Little Falls Company, on November 8, 1898, executed to Messrs. Milliken & McGuire a written contract whereby it purported to license and permit them to cut and remove the pine timber suitable for saw logs, and none other, from a number of tracts of land, including the one here in question. This permit was duly recorded, and expired by its own terms on May 1, 1900, but was thereafter extended to May 1, 1902. On November 16, 1901, the governor of the state, purporting to act pursuant to the compromise act of 1901, made a deed to the Northern Pacific Railway Company of certain tracts of land, including the one in question, which was included therein by mistake in certifying the list to him. This deed was duly recorded December 12, 1901. On December 7, 1901, the Northern Pacific Company, by deed which was recorded December 26, 1901, purported to convey the land for a valuable consideration to Dwight F. Brooks, who then had no actual knowledge of the sale thereof by the state to Stoner, and who by a timber deed, dated October 16, 1902, and recorded October 27, 1902, purported to convey to the defendant all of the timber, except hardwood and cedar, on the land, with the right to enter thereon and to cut and remove such timber. The defendant, after receiving its timber deed, entered upon the land before the commencement of this action and in the spring of 1904, and cut and carried therefrom timber of the value of at least $900.

1. The first question to be determined is the title to the land from which the timber, which is the subject-matter of this action, was cut. The land was not within the place limits of the grant to the Little Falls Company; that is, within any of the counties into or through which its line was constructed. Nor could it be claimed as indemnity land to make up any deficiency in the land earned by

the company in the construction of the two sections of thirty miles each of the road which was completed within the time limited by the terms of the grant; for lands in excess of the amount earned by the company by such construction were conveyed to it by the state. The only possible claim the company could have to this particular land was by virtue of what had been done by it in the construction of the uncompleted third section of its line. But by the very terms and conditions of the grant all lands granted appertaining to the uncompleted portions of the line became "revested in the state without further act or ceremony." After the land was so revested in the state, and on January 4, 1894, the Little Falls Company included the land in a list of land selected by it to fill its grant, which was filed with the land commissioner. It is immaterial whether that officer approved the list or not, so far as it related to the land in question; for, the land having vested in the state, no act or omission of the land commissioner could affect the title. The evidence, however, shows that he did not approve of the list. The selection of this land and the filing of the list was then a nullity as to the state, and the land was subject to selection by the state land commissioner for the benefit of the state institutions. On September 20, 1898, that officer selected the land for such institutions, pursuant to Laws 1865, p. 15, c. 5 (G. S. 1894, §§ 4028–4038).

It is the contention of the defendant that such selection was void, because the officer did not select for any particular institution any specified lands. He in fact certified that he had selected and set apart the swamp land described in a list annexed to his certificate for the different state institutions pursuant to the act of 1865, but did not apportion in his certificate the land so selected between the several institutions for whose benefit they were selected. We are of the opinion that the failure to so apportion them in the certificate did not render the selection invalid. The vital thing to be done was the selection and setting apart of the lands for the state institutions, and so certifying. The apportionment of the lands so set apart between the several institutions was a matter of detail, and we hold that the land was legally selected and set apart for the state institutions. The lands so selected were "irrevocably dedicated and set apart for the purposes for which the same were selected." G. S. 1894, § 4030. The permit or license to Milliken & McGuire to cut and remove the pine timber suitable for

saw logs from the land cannot have the effect to bring the land within the operation of Laws 1901, p. 267, c. 193. At the time the governor made a deed of the land to the Northern Pacific Railway Company the land in question had already been sold by the state to Stoner, and the deed was void so far as it attempted to convey such land; for the land commissioner had no power to include it in the list of lands to be conveyed under the compromise act, nor the governor to convey it. Neither the defendant, nor its grantor, Brooks, ever acquired any title to the land or the timber thereon. The deed of the governor being void, not simply voidable, it is immaterial whether Brooks was a bona fide purchaser or not.

2. The defendant, however, claims that the plaintiff cannot in any event recover for the timber, because the title in fee to the land was in the state until the patent was issued, which was after the commencement of the action. The claim is without merit. The owner of a state certificate of sale of school or swamp lands is entitled to possession of the land and its rents and profits, and, as against all the world except the state, he is to be treated as the owner of the land. He may maintain ejectment for its possession and trespass against a wrongdoer. When the patent for such land issues, it relates back to the date of the sale. Wilder v. Haughey, 21 Minn. 101; McKinney v. Bode, 32 Minn. 228, 20 N. W. 94; Haaven v. Hoaas, 60 Minn. 313, 316, 62 N. W. 110; Hastay v. Bonness, 84 Minn. 120, 86 N. W. 896; Gilbert v. McDonald, 94 Minn. 289, 102 N. W. 712; Nicholson v. Congdon, 95 Minn. 188, 103 N. W. 1034.

3. The last claim urged by the defendant to be considered is to the effect that the sale of the land to Stoner at public sale was void because the land was chiefly valuable for the timber thereon, which could only be sold pursuant to G. S. 1894, § 3965, which provides that in such cases the land itself shall not be sold until the timber thereon has been appraised and sold. There is evidence in the record tending to show that there was one hundred thousand feet of pine timber on the land at the time it was sold. The duty of determining the question of fact whether any particular tract of state land is chiefly valuable for the pine timber thereon, which fact determines the manner of its sale, is vested by law in the state land commissioner. G. S. 1894, § 4008. The correctness of his decision of the question cannot be reviewed in

a collateral action after the patent has been issued, and especially so by one having no interest in the land.   McKinney v. Bode, 33 Minn. 450, 23 N. W. 851; 26 Am. & Eng. Enc. (2d Ed.) 388.

It follows that the verdict in favor of the plaintiff was right, and the order for judgment for the defendant notwithstanding the verdict wrong

Order reversed, and cause remanded, with direction to the district court to enter judgment upon the verdict for the plaintiff.