## CLARK et al. v. FRAZIER.

No. 9306—Opinion Filed Dec. 10, 1918.

Rehearing Denied Jan. 13, 1919.

(177 Pac. 589.)

1. **Trusts—Constructive Trust — Sufficiency of Petition.**

The petition in this case examined, and held to state a cause of action, and it was error to sustain a demurrer thereto.

2. **Pleading—Conclusions of Law — Inadequate Remedy at Law.**

Where the allegations of a petition clearly show that the plaintiffs have no adequate

remedy at law, it is unnecessary to allege the same.

(Syllabus by Hooker, C.)

Error from District Court, Lincoln County; Chas. B. Wilson, Jr., Judge.

Suit by Mary Clark and others against Ella Frazier. Demurrer to petition sustained, and plaintiffs bring error. Reversed and remanded, with directions.

F. A. Rittenhouse and George B. Rittenhouse, for plaintiffs in error.

Emery A. Foster, for defendant in error.

Opinion by HOOKER, C. The petition in this case alleges that the plaintiffs and the defendant are the only heirs of one Mott, who died intestate in Lincoln county, Okla., in 1900, and that she owned at the time of her death a school land lease on the real estate involved in this action, and that she was in the possession thereof, and that after her death one Andrew G. Parks entered into possession of said lease for the use of himself and the other heirs, and that he made valuable improvements thereon, as well as paid the rentals to the state up to November 22, 1915, at which date the state had advertised and sold the same, but that the defendant, Ella Frazier, for the use of herself and the other heirs, held the lease in her own name; that at said sale it was agreed that Ella Frazier and one other heir should attend the sale and purchase the same for the use of all the heirs, and that by fraud and deceit the said Ella Frazier induced the other heir to remain away from said sale, agreeing to attend said sale and carry out the agreement made by the heirs with the two, but that said Ella Frazier, in violation of said agreement, attended said sale and purchased the property and paid for it with the money belonging to all of the heirs of said Mott, and took the title to herself, and now claims the same as her own, and refuses to recognize any of said heirs as interested in said property; and in the second cause of action an accounting is asked for, alleging that certain moneys from the proceeds of the sale of personal property of the said Mott was delivered to said Ella Frazier, and she failed to account for it, and had appropriated it to her own use, to the detriment of the heirs.

A demurrer was sustained to this petition, and plaintiffs in error have appealed. Does it state a cause of action? The defendant, Ella Frazier, contends not, as she says that a trust cannot be declared in school land for that the purchaser, under section 7160, Rev. Laws 1910, must make an affidavit that the land is for his own use, and that this statute renders invalid the contract alleged to have been made by the heirs with her prior to the sale, and in support of her contention the following authorities are cited: 26 Cyc. 416; Churchill v. Anderson, 56 Cal. 55; McGregor v. Donelly, 67 Cal. 149, 7 Pac. 422; Higgins v. Butler, 10 Okla. 345, 62 Pac. 810; Prince v. Gosnell, 19 Okla. 175, 92 Pac. 164; Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272; Bess v. Smith, 12 Okla. 485, 71 Pac 628. And in McMillan v. Wright, 56 Wash. 114, 105 Pac. 176, the rule is announced that, where the parties have made a contract not specifically enforceable because invalid as against public policy, equity will not make and enforce a new and valid contract for them.

It is also asserted that the preference right given by law to lessees came into existence in 1906, by virtue of section 9 of the Enabling Act, and that, as Mrs. Mott died in 1900, the rights of the heirs must be governed by the laws in force at the time of her death. The petition here does not allege that it was agreed or understood that Ella Frazier and the other should attend said sale, and buy said land for themselves and thereby make an affidavit that they had bought the same for themselves only, and that no one else was directly or indirectly interested therein, but it will be noticed that said petition charges that it was agreed that these parties should attend said sale and purchase the same for the use and benefit of all the heirs, and thereby protect the heirs in the property right which had been paid for by them and held in trust for them since her death. Therefore this provision of the statute does not apply, and constitutes no bar to the enforcement of their right under the allegations of the petition. Had Ella Frazier complied with the agreement as alleged, no statute would have been violated. The fact that she bought the property in her own name, made an affidavit that it was for her own use, and no one was interested directly or indirectly therein, all in violation of good faith and contrary to her own agreement, cannot be urged by her as a reason why she should not be made to carry out her agreement.

Under section 7156, Rev. Laws 1910, a purchaser of school land has the right to transfer his right in and to such lands before delivery of the patent.

This court in Winemiller v. Page, 75 Okla. 278, 183 Pac. 50, says:

"1. The public policy of a state, which a contract must violate in order to render it illegal and unenforceable, must be ascer-

tained from the Constitution, legislative enactments, and decisions of the courts of the state. The courts will not denounce a contract as being void and unenforceable unless it clearly and unequivocally contravenes the principles of public policy, ascertained from above designated sources, and not in problematical and doubtful cases.

"2. A contract, lawful in its inception and within the reasonable reach and scope of its terms and conditions, is not rendered illegal and unenforceable by the doing of an unlawful act by one of the parties to the contract in the course of its performance; such unlawful act not being required by the terms of the contract.

"3. When two or more parties engage in a joint enterprise, and in the furtherance of such enterprise property is acquired and the title thereto is taken in the name of one of the parties, such party holds said property in trust for all the parties to such joint enterprise, and the statutes of fraud do not apply in such cases.

"4. Where property, real or personal, which is impressed with a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee to one having actual or constructive notice of the trust, such purchaser acquires and holds such property subject to the said trust that existed before such transfer, and becomes himself trustee for the original beneficiary.

"5. Where the trustee has placed the original trust property beyond the reach of the beneficiary by sale to an innocent purchaser for value and without notice, the trust attaches to the proceeds of such sale, and said trustee holds said fund in trust for the beneficiary.

"6. Notice to an agent while acting for his principal and within the scope of his authority is imputed to the principal. Notice to an agent who represents both parties to a transaction with their knowledge and consent is notice to either of them to whom it would be notice if the agent represented him alone, and, if each would be charged, the notice to the agent is notice to both.

"7. To constitute a "bona fide purchaser" three things must exist: (a) A purchase in good faith; (b) for value; and (c) without notice. And, where a subsequent purchaser interposes the defense of a bona fide purchaser, the burden is upon him to show a purchase for value, and on his failure to do so he cannot claim the benefits of a bona fide purchaser.' [Adams Oil & Gas Co. v. Hudson, 55 Okla. 386] 155 Pac. 220.

"8. In actions growing out of trust relations the statute of limitation begins to run in favor of the trustee and against the cestui que trust when the trust terminates or when the trustee repudiates the trust and asserts an interest adverse to the cestui que trust, and when the cestui que trust has knowledge of the repudiation and assertion of an adverse claim by the trustee; in such cases subdivision 6, § 4657, R. L. 1910, which provides, 'An action for relief, not hereinbefore provided for, can only be brought within five years after the cause of action shall have accrued,' applies."

The petition contains sufficient allegations to allege fraud. Zehr v. May, 67 Okla. 97, 169 Pac. 1077, L. R. A. 1918C, 431. And the rule is that where the allegations of the petition clearly show that the plaintiffs have no adequate remedy at law, it is unnecessary to allege they have no adequate remedy at law. Gill v. Newhouse (Mo.) 178 S. W. 495. Section 34, Story's Equity Pleading is as follows:

"If the case made by the bill is otherwise of clearly equitable jurisdiction, the court will sustain it although the clause is omitted."

See 16 Cyc. 222, and cases cited.

It is the contention of the plaintiffs in error that under the facts alleged in the two causes of action the petition states facts sufficient to constitute a resulting trust, and that Ella Frazier holds the legal title in trust for the heirs of Malinda C. Mott.

Section 6660, Rev. Laws 1910, provides that when a transfer of the real property is made to one person, and the consideration therefor is paid by or for another, the trust is presumed to result in favor of the person by or for whom such payment is made.

Section 6659, Rev. Laws 1910, provides for trusts in relation to real estate by operation of law.

Frank Irvine in his work on Trusts, 39 Cyc. 104, lays down the rule as follows:

"* * * A resulting trust may arise: (1) Where an estate is purchased in the name of one person, but the money or consideration is paid by another; (2) where there is a disposition of property upon trusts which are not declared, or are only partially declared, or are illegal; (3) where a conveyance is made without any consideration, and it appears from the circumstances that the grantee was not intending to take beneficially; (4) where a person standing in a fiduciary relation uses fiduciary funds or assets to purchase property in his own or a third person's name; and (5) it has been said that a resulting trust will arise in certain cases of fraud where transactions have been carried on mala fide. * * *"

Our statute was taken from Dakota, and in the case of Sing You v. Wong Free, 16 S. D. 383, 92 N. W. 1073, the money was advanced to purchase a part interest in a mining claim; a patent was taken in the name of the person receiving the money. It was

held that he held the legal title in trust for the persons furnishing the money to the extent of their interests.

The statute was again construed in Hickson v. Culbert, 19 S. D. 207, 102 N. W. 774, and a trust was said to be proper under facts much more extreme than in the instant case. The court said that it was immaterial when the money was paid, and that the trust would exist in favor of the one who furnished the money even in the absence of any agreement for a trust. It was said that the statute did not contemplate an agreement.

In the case of J. I. Case Thresh. Mach. Co. v. Walton Trust Co., 39 Okla. 748, 136 Pac. 769, this court held:

"Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner."

"Resulting trusts are not within the statute of frauds, and may therefore be established by parol evidence, where not otherwise incompetent."

See, also, Boyd v. Winte, 65 Okla. 141, 164 Pac. 781.

In the case of McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176, Ann. Cas. 1913C, 146, it is held that:

"Where a petition contains the averment that plaintiff and two other parties entered into a verbal agreement, by which it was agreed and understood, by and among the three parties, that each would contribute one-third of the purchase price of a tract of land, and that the deed to same should be made to the three parties jointly, and that, acting upon such agreement, each party contributed his part of the purchase money, and that the deed, when executed, instead of being made to the three parties jointly, was made to the two parties other than plaintiff, and that such variance between the deed and the agreement was due to the intrigue and fraud of one of the joint grantees named in the deed, held, such an agreement is not within the statute of frauds, and such petition does not fail to state a cause of action by reason of the alleged contract being in parol."

"Where three parties enter into a verbal agreement whereby it is agreed and understood, by and among them, merely that together they will purchase a certain tract of land, each paying one-third of the purchase price, and that the deed to such land shall be made to the three parties jointly, and that each party shall own and hold an undivided one-third interest therein, such an agreement is not one which will constitute 'a contract creating an express trust for the sale of real estate.' nor is it such an agreement as from its term would imply an intent to create a trust. But if, through mistake or fraud, after each party acting upon such agreement has paid his portion of the purchase price, the deed to such land be made to two of the parties jointly, the other party to the agreement not being mentioned in the deed, then the law presumes a trust to result from such facts in favor of the party whose name is left out of the deed. And in a suit to have a resulting trust declared in favor of the party whose name is left out of the deed, oral testimony is admissible to prove the parol agreement."

In the body of the opinion it is said:

"Hence if there is a trust of any class involved in this case, it is one arising from the facts, and becomes a trust by operation of law. If, from the condition of facts existing, a trust arises or results by operation of law, then it may be valid whether the agreement from which the condition arises be in writing or in parol; and, if the facts alleged in the petition are such that from them the law presumes a trust, or such that a trust results therefrom, it becomes one which, by the authorities, is universally treated as an implied trust or a resulting trust, and is not within the statute of frauds."

In the case of Flesner v. Cooper, 39 Okla. 133, 134 Pac. 379, it was held that:

"Upon what theory the court excludes the testimony tending to prove these material facts we do not know. Notwithstanding the importance of the case, there has been no appearance on the part of the defendant in error in this court. If it was the intention of George W. Gardenhire, in the conveyance by him made, and those subsequently made by his authority (if such was the case), to retain the beneficial interest in the land, though the legal title was in another, in equity, he would continue to be the real owner, save as against the rights of innocent purchasers from the one holding the legal title. It was competent for the defendant to show that, notwithstanding the legal title in turn vested in the several grantees, yet, the conveyances being without consideration, and the grantor at all times having continued to exercise full control and ownership over the land, he in fact was the true owner, and that, from the several conveyances and the accompanying facts and circumstances, it was intended that the beneficial interest should not go to or be enjoyed by the party holding the legal title. Such fact being established, a resulting trust would arise in favor of the grantor. As is said in Pomeroy's Equity Jurisprudence, § 1031: 'In all species of resulting trusts, intention is an essential element, although that

intention is never expressed by any words of direct creation. There must be a transfer, and equity infers the intention that the transferee was not to receive and hold the legal title as the beneficial owner, but that a trust was to arise in favor of the party whom equity would regard as the beneficial owner under the circumstances. * * * Resulting trusts, therefore, are those which arise where the legal estate in property is disposed of, conveyed, or transferred; but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. This person is the one from whom the consideration actually comes or who represents or is identified in right with the consideration; the resulting trust follows or goes with the real consideration.' Pomeroy's Equity Jurisprudence, §§ 155, 1030, 1031, et seq.; Morgan v. Field. 35 Kan. 162, 10 Pac. 448: Sanders v. Steele, 124 Ala. 415, 26 South. 882.''

From the facts and circumstances of the instant case it is apparent that the consideration was paid by all the heirs of Malinda C. Mott, that the possession of the premises was in Andrew G. Parks for and on behalf of all the heirs but that the naked legal title was in Ella Frazier, bringing the case clearly within the rule announced in the foregoing case.

In the case of Mendenhall v. Walters et al., 53 Okla. 598, 157 Pac. 732, the court held:

"In the absence of circumstances showing a contrary intention, where property is conveyed to a husband in consideration of money or assets furnished by or belonging to the wife, particularly where such conveyance is made to the husband, without the wife's knowledge or consent, a trust results in favor of the wife with respect to such property."

In the case of Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859, Ann. Cas. 1916D, 1191, the court in construing a constructive trust held:

"Where a party obtains the legal title to property, not only by fraud or by violation of confidence; or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain it against the rightful owner equity carries out its theory of a double ownership equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

The following cases affirm the existence of a trust where property is purchased with the money of another: Graham v. King, 96 Ky.

339, 24 S. W. 430; Elmer v. Wellsand, 93 Minn. 444, 101 N. W. 612; Brown v. Brown. 77 Va. 619; Boyd v. Hankinson, 92 Fed. 49, 34 C. C. A. 197; Kent v. Deau, 128 Ala. 600, 30 South. 543; Arnold v. Cord, 16 Ind. 177.

In the case of Rees v. Egan. 66 Okla. 20, 166 Pac. 1038, it is held:

"A trustee cannot acquire rights antagonistic to the cestui que trust; and, where money has been paid over to a person to purchase property for another, who furnishes the money, a trust relationship is established, and the person to whom the money is paid and who has agreed to make the purchase cannot acquire the property for himself so long as the trust relationship exists."

"Mutuality of interests constitutes a valid consideration between persons who engage to promote a common business enterprise; and one who engages with others to purchase interests in an oil lease in order that money may be procured for development, and who has received the money necessary from each of his associates for such purpose, he agreeing to purchase a certain interest for each, cannot acquire the interest of one of his associates for himself and avail himself of the defense that there was no consideration for the performance of the duties which he agreed to assume in behalf of all interested."

A holder of a school land certificate, having a preference right to buy the land, has an equitable estate in the option.

The law is very definitely settled that a trust may be created in equitable as well as legal interests and estates. Thus Lewin says:

"As a general rule, all property, whether real or personal, or whether legal or equitable, may be made the subject of trust." 1 Lewin on Trusts (8th Ed.) 47.

Perry lays down the same rule. 1 Perry on Trusts and Trustees (6th Ed.) § 67.

In Wilder v. Hanghey, 21 Minn. 101, it was held that one who held a certificate for the purchase of school lands from the state, and lands having been sold on a partial payment, was the equitable owner of the land. And on this basis it was further held that the land came within the homestead statute.

The effect of a certificate for the purchase of state land was considered in White, etc., Co. v. Lumber Co., 100 Minn. 16, 110 N. W. 371, the certificate being similar to the certificates issued in Oklahoma, and the legal title being reserved in the state until the purchase price is paid in full. It was held that a private party could not claim that the certificate holder was not the owner in fee:

"The owner of a state certificate of sale of school or swamp lands is entitled to posses-

sion of the land and its rents and profits, and, as against all the world except the state, he is to be treated as the owner of the land."

The nature of the preference right of a state land lessee is defined in Noel v. Barrett, 18 Okla. 304, 90 Pac. 12. It is said to be "a valuable property right. * * * Such preference rights are the subject of sale and purchase the same as titles to other lands."

It is clear that the preference right of a school land lessee to purchase the land is, in legal effect, an option. The lessee has a valid right to purchase an option. And an option, even before election to purchase by the optionee, is held to create an equitable estate in the optionee. Kerr v. Day, 14 Pa. 112, 53 Am. Dec. 526; House v. Jackson, 24 Or. 89, 32 Pac. 1027; Telford v. Frost, 76 Wis. 172, 44 N. W. 835; Wall v. Ry. Co., 86 Wis. 48, 56 N. W. 367.

We are of the opinion that the petition stated a cause of action, and this cause is reversed and remanded, with directions to overrule the demurrer to both counts of the petition and to give defendant leave to answer.

By the Court: It is so ordered.