KNAPP v. STATE ex rel. COM'RS OF LAND OFFICE.

No. 31905. Jan. 15, 1946.

Rehearing Denied Feb. 26, 1946.

166 P. 2d 86.

Otjen & Carter, of Enid, for plaintiff in error.

Everett H. Welborn and Bruno Miller, both of Oklahoma City, for defendant in error.

DAVISON, J. This cause is appealed to this court by W. E. Knapp from a judgment of the district court of Kay county sustaining the action of the Commissioners of the Land Office of the State of Oklahoma forfeiting the preference right of W. E. Knapp to re-lease farm lands located in Kay county. The judgment of the district court of Kay county was rendered by virtue of appeal to that court by W. E. Knapp from the original action of the Commissioners of the Land Office declaring the forfeiture. In this opinion W. E. Knapp will be referred to as plaintiff and the Commissioners of the Land Office as defendant.

The farm lands consist of 160 acres and are a part of the land reserved by acts of Congress and transferred to the State of Oklahoma by the Enabling Act and the Oklahoma Constitution for the support of state educational institutions. The plaintiff has been a preferential lessee of the land from 1902 to 1907 by preference lease from the Territorial Board, and from 1907 to December 31, 1941, by preference lease from the State of Oklahoma.

The plaintiff has constructed a house, barn, and other structures upon the property which are admitted to be the property of plaintiff. The plaintiff claims other improvements entitle him to ownership or compensation therefor. This proposition will be discussed later in this opinion.

This controversy had its beginning when the 1941 Legislature passed Senate Bill No. 45, now 64 O. S. 1941 § 87a, which provides in part (subd. g):

"In order to better enable the Com-

missioners of the Land Office to determine the correct rental value of original grant lands now held under preference right leases, and in order to determine what soil conservation work may be necessary and required on such lands. . . ."

and for expenditure of funds:

"In securing a late and up-to-date appraisal of all lands now covered by preference right leases. Such appraisal shall be made by at least two appraisers, duly designated and appointed for the purpose by the Commissioners of the Land Office, and such appraisement shall show separately the fair cash value of the lands so appraised and the improvements located thereon."

And further provides:

". . . Such appraisement shall be used and followed by the Commissioners of the Land Office in fixing the annual rental value of all such preference right lease lands and all such lands may be leased by the Commissioners of the Land Office for a term of five years, at an annual rental of not less than three per cent (3%) of the appraised value of such lands, exclusive of improvements."

Pursuant to this act and on July 8, 1941, the defendant caused the farm lands herein to be appraised at $6,400, which was $400 more than a prior appraisement in 1932 made for this purpose, and the improvements at $1,950. The appraisement was approved by defendant and rental was fixed at $192 per year as compared to $120 under the prior appraisement and rate. By letter dated October 2, 1941, the plaintiff was advised of the new appraisement and rental and enclosed a lease for a term of five years from January 1, 1942. The record of the minutes of the defendant disclosed some dissatisfaction by lessees, particularly in Kay county, with appraisement made under the 1941 act, and the defendant made provision for hearing before it. By registered letter from defendant to plaintiff dated January 27, 1942, and received January 29, 1942, the plaintiff was advised his preference right to re-lease would be declared forfeited un-

less within 10 days from receipt plaintiff executed and returned the renewal lease. The record reflects he appeared before the defendant and made oral and written protest.

On March 2, 1942, the defendant declared the preference right of plaintiff to re-lease forfeited and plaintiff, on March 6, 1942, filed notice of appeal and lengthy specifications of error, appealing to the district court of Kay county.

On trial commenced January 13, 1944, the trial court rendered a judgment sustaining the appraisement and actions of the defendant in all respects and remanding the matter to the Commissioners of the Land Office for further action. The trial court allowed great latitude in the introduction of evidence and expression of opinion. The plaintiff has appealed to this court from the judgment.

Plaintiff makes extensive specifications of error and those necessary to the determination of this appeal are hereinafter discussed. It is apparent and so stated in the brief of plaintiff that he has inserted therein his individual opinions and contentions. This is reflected in plaintiff's claim that the title of the land is vested in him.

The question of a preferential lessee's interest and rights in land of this character was exhaustively discussed and determined in Magnolia Petroleum Co. v. Price, 86 Okla. 105, 206 P. 1033. Magnolia Petroleum Company owned an oil and gas lease and Price, being in possession under an agricultural lease, claimed all the oil and gas. In that decision we traced the history of reserved lands through the various Acts of Congress, the Oklahoma Constitution, and the statutes as they then existed. We said:

". . . The only rights he had were those defined by his lease contract with the state and those defined by the laws of the state, which rights, as defined both by the laws and by his lease contract, are no more than the preference

right to re-lease such land for agricultural purposes at the expiration of his lease, if the state elects to re-lease it, and the right to purchase same when sold by the state, if the state should sell it. . . ."

The plaintiff does not have a copy of the lease under which he held prior to statehood (1907), but introduced leases on other lands executed prior to statehood which he states are like the lease he held under. Examination of these does not disclose any conflict with our expressions above.

From the clear language in Magnolia Petroleum Co. v. Price, supra, the state has title and owns the farm lands in question. It could sell or lease or do neither.

The plaintiff contends that the preference right is a valuable property right of which he is unlawfully being deprived, and cites Clark v. Frazier, 74 Okla. 141, 177 P. 589, as authority that the preference right was an option creating an equitable estate. The language in that case to that effect was considered by us in Anderson-Prichard Oil Corp. v. McBride, 188 Okla. 384, 109 P. 2d 221, and disapproved:

"While in Clark v. Frazier, 74 Okla. 141, 177 P. 589, it was stated that the preference right was an option, and therefore an equitable estate in the land, it is apparent that such right is not in fact an option enforceable at the will of the lessee, and is not in the true sense an equitable interest or estate in the land. 20 C. J. 1303. The cases cited in support of the statement in Clark v. Frazier, when examined, do not support it, as they involved options enforceable at the election of the holder thereof, and which did not, as here, depend upon the election of the grantor."

We find nothing in the record that indicates that plaintiff was deprived of the first opportunity to re-lease the property. The defendant tendered a lease to plaintiff in recognition of its obligation to plaintiff as a preference right lessee.

The plaintiff contends Senate Bill No. 45 (64 O. S. 1941 § 87a, subd. (d), is unconstitutional in that it violates the due process clause of the Constitution of Oklahoma and the United States where it provides:

". . . In arriving at the value of the improvements to which any such preference right lessee is entitled under the provisions of the present law governing the sale of preference right lease lands, it is hereby expressly provided that the expenses paid for the construction of terraces, construction of ponds, and the construction of any other similar improvements that actually become a part of the land and cannot be removed therefrom, shall not be deducted from the value of the improvements to which a preference right lessee is entitled, and any improvements, such as the construction of terraces, construction of ponds, and improvements of a similar nature, shall be considered as an integral part of the land itself to which the preference right lessee shall be, in no wise, entitled."

This provision specifically applies by its terms to sales of lands held by preference right lessees and not to the re-leasing of such lands. As pointed out above a sale of the land is not involved here but the rights of the parties upon re-leasing. The determination of the constitutionality of the quoted provision is not within the issues herein.

The plaintiff finds fault with an appraisement by two appraisers for the purpose of determining the rental value of the land. Plaintiff contends there should have been three appraisers and states the correct method should have been for the plaintiff and defendant each to select an appraiser and these to select a third appraiser. With this we cannot agree.

Section 10 of the Enabling Act provides the lands may be leased for periods not to exceed five years "under such rules and regulations as the Legislature may prescribe," and section 32, art. 6, of the Constitution provides the defendant shall "have charge of the sale, rental, disposal and man-

aging of the school lands . . . under rules and regulations prescribed by the Legislature." The Legislature has from time to time directed re-appraisal for rental purposes and was fully empowered to do so and in its discretion may provide for appraisement for that purpose by two appraisers. This power naturally flows from its ownership, control, and management of the property.

In addition, we note the leases introduced by plaintiff as representative of those he previously held under, prior to 1907, contain a provision for re-appraisement for rental purposes.

Plaintiff asserts the reservation in the tendered lease of the right by defendant, its lessees or grantees, to enter the premises to explore for oil or gas and operate thereon after discovery, conflicts with plaintiff's agreement in the lease not to permit any waste or trespass and provides for no remuneration for damages to plaintiff's improvements, and agricultural and grazing rights. It is obvious the exercise of the right by defendant or its lessees and grantees under the reservation would not be waste or trespass attributable to defendant.

64 O. S. 1941 §§ 282, 283, and 287 authorize the selling of oil and gas leases and provide for reimbursement to the agricultural lessee, surface owner or purchaser for damages to the surface interest, crops, improvement, etc., by such operations. The inclusion in the tendered lease of a reservation of the right to explore or lease for oil and gas was clearly proper. See Anderson-Prichard Oil Corp. v. McBride, supra, in which it was held such operations were not a damage to the preference right.

Plaintiff contends that the proceedings of the defendant resulting in the forfeiture of his preference right did not afford to him due process of law and that there was not a proper division of the functions of the state. These questions were settled adversely to plaintiff's contention in Wilhite v. Cruce, 70 Okla. 70, 172 P. 962, where the same contentions were made to the actions of the defendant in forfeiting a lease, selling improvements and ousting lessees from possession.

Comparison of the proceedings of the defendant with the provisions of 64 O. S. 1941 §244 reveals compliance with the provisions of the statute. 64 O. S. 1941 § 250 provides for appeals from all decisions of the defendant and prescribed the procedure. Plaintiff availed himself of this right.

Finally, plaintiff insists the action of the trial court in affirming the appraisement of the 160 acres of land separate from the improvements at $6,400 is contrary to the evidence. Plaintiff contends the value of the land for rental purposes should have been placed at $2.50 per acre. This is stated by him to be the original value placed upon land at the time of the opening of the Cherokee Strip before the land was improved or broken out for cultivation. We have previously determined the validity of the re-appraisement for rental purposes. We have examined the record and the appraisal of $6,400 is amply sustained. We find no error in confirming the appraisal.

The judgment of the trial court is affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, WELCH, CORN, and ARNOLD, JJ., concur.