Dear Secretary Johnson
¶ 0 This office has received your request for an official Opinion asking, in effect, the following question:
 When the Commissioners of the Land Office sell land out of the School Land Trust, and a current surface lessee of that land, with a preference right to purchase, is still occupying the land under a lease, may the Commissioners use an auction procedure under which once an initial high bid among those competing with the preference right lessee is reached, bidding continues between the preference right lessee and the highest competitor, until either the lessee chooses not to match the final and highest bid, or chooses to match the bid and no higher bid is made?
¶ 1 Your question deals with the State's obligation to honor a current surface lessee's preference right to purchase and the State's obligation, at the same time, to maximize the income from the sale of School Land Trust property. These obligations were imposed upon the State when the School Land Trust was created.
 I. GENERAL NATURE OF THE SCHOOL LAND TRUST, AND THE STATE OF OKLAHOMA'S ACCEPTANCE OF SCHOOL LAND PROPERTY
¶ 2 In 1906, when the United States Congress passed the Oklahoma Enabling Act, Act of Congress, June 16, 1906, c. 3335, §§ 1-22, 34 Stat. 267-278, Congress provided that the inhabitants of what then constituted the Territory of Oklahoma and Indian Territory could adopt a constitution and become the State of Oklahoma through the calling of a State constitutional convention and by following various other procedures.
¶ 3 The Enabling Act also provided that upon admission of the State of Oklahoma into the Union, certain property and monies would be granted by the federal government to the new State, in trust, for the use and benefit of schools, universities and other public institutions. Oklahoma Enabling Act, §§ 7-12,34 Stat. 267, 272-274 (1906).
¶ 4 Specifically, Section 7 of the Enabling Act grants to the State, upon admission to the Union, lands to be used for the benefit of common schools:
 That upon the admission of the State into the Union sections numbered sixteen and thirty-six, in every township in Oklahoma Territory and all indemnity lands heretofore selected in lieu thereof, are hereby granted to the State for the use and benefit of the common schools.
Oklahoma Enabling Act, 34 Stat. 267, 272 (1906).
¶ 5 Additionally, Congress, in Section 8 of the Enabling Act, granted lands to the State for the use and benefit of the University of Oklahoma and the University Preparatory School, normal schools, Agricultural and Mechanical College and the Colored Agricultural Normal University.
 That section thirteen in the Cherokee Outlet, the Tonkawa Indian Reservation and the Pawnee Indian Reservation, reserved by the President of the United States by proclamation issued August nineteenth, eighteen hundred and ninety-three, opening to settlement the lands, and by any Act or Acts of Congress since said date and section thirteen in all other lands which have been or may be opened to settlement in the Territory of Oklahoma, and all lands heretofore selected in lieu thereof, is hereby reserved and granted to said State for the use and benefit of the University of Oklahoma and the University Preparatory School, one-third; of the normal schools now established or hereafter to be established, one-third; and of the Agricultural and Mechanical College and the Colored Agricultural Normal University, one-third[.]
Oklahoma Enabling Act, 34 Stat. 267, 273 (1906).
¶ 6 In granting these lands to the State, Congress, in Sections 9 and 10 of the Enabling Act, recognized the State's power to sell such land. In doing so Congress provided that current agricultural lessees at the time of sale, should have the preference right to purchase such land at the highest bid. Recognizing such right, Section 9 of the Enabling Act provides:
 That said sections sixteen and thirty-six, and lands taken in lieu thereof, herein granted for the support of the common schools, if sold, may be appraised and sold at public sale in one hundred and sixty acre tracts or less, under such rules and regulations as the Legislature of the said State may prescribe, preference right to purchase at the highest bid being given to the lessee at the time of such sale,
the proceeds to constitute a permanent school fund the interest of which only shall be expended in the support of such schools.
Oklahoma Enabling Act, 34 Stat. 267, 274 (1906) (emphasis added).
¶ 7 In like manner, when sections thirteen and thirty-three land is sold, current lessees are granted a preference right to purchase at the highest bid under Section 10 of the Enabling Act:
 That said sections thirteen and thirty-three aforesaid, if sold, may be appraised and sold at public sale, in one hundred and sixty acre tracts or less, under such rules and regulations as the Legislature of said State may prescribe, preference right to purchase at the highest bid being given to the lessee at the time of such sale. . . .
Oklahoma Enabling Act, 34 Stat. 267, 274 (1906) (emphasis added).
¶ 8 The people of the State of Oklahoma in adopting the State Constitution, accepted the lands granted them in the Enabling Act, to be kept in trust for the purposes and under the conditions specified in Congress' grant. In Article XI, § 1 of the Constitution, the State accepted the granted lands and proceeds therefrom as a sacred trust for the use and purposes granted:
 The State hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act . . . for the uses and purposes and upon the conditions and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated.
Okla. Const. art. XI, § 1 (emphasis added).
¶ 9 In accepting the lands granted by the federal government in trust the State also pledged to reimburse the trust for any losses incurred:
 The principal shall be deemed a trust fund held by the State, and shall forever remain inviolate. It may be increased, but shall never be diminished. The State shall reimburse said permanent school fund for all losses thereof which may in any manner occur, and no portion of said fund shall be diverted for any other use or purpose.
Okla. Const. art. XI, § 2 (emphasis added).
 II. OBLIGATION OF THE STATE, THROUGH THE COMMISSIONERS OF THE LAND OFFICE, TO MANAGE SCHOOL LAND TRUST PROPERTY FOR THE BENEFIT OF THE TRUST BENEFICIARIES, AND TO OBTAIN THE MAXIMUM BENEFIT AND RETURN FOR THE USE OF TRUST PROPERTY AND ASSETS
¶ 10 In an original action filed in the Oklahoma Supreme Court in 1982, the Oklahoma Education Association and the Attorney General asked the Court to strike down, as violative of the Oklahoma Constitution and provisions of the Oklahoma Enabling Act, statutory restrictions put upon the management of the School Land Trust property. Oklahoma Education Association v. Nigh,642 P.2d 230 (Okla. 1982). Those restrictions put limits on the lease rentals the Commission could obtain from the use of trust property, limited the interest the trust could charge on the loan of trust monies, and required the releasing of the land to the current lessee without requiring such lessee to exceed or match other bids.
¶ 11 In holding all five of the challenged statutes unconstitutional, the Oklahoma Supreme Court discussed the State's obligation as trustee of School Land Trust funds and property. First, the Court held that the State's acceptance of the Trust res, under the terms and conditions specified in the Enabling Act, constituted an irrevocable compact between the United States and Oklahoma:
 These acceptance provisions of the Oklahoma Constitution and the Enabling Act constitute an irrevocable compact between the United States and Oklahoma, for the benefit of the common schools, which cannot be altered or abrogated.
Nigh, 642 P.2d at 235 (emphasis added).
¶ 12 With respect to the State's obligation in disposing of School Land Trust property, the Court stated:
 No disposition of such lands or funds can be made that conflict either with the terms and purposes of the grant in the Enabling Act or the provisions of the Constitution relating to such land funds. The State has an irrevocable duty, as Trustee, to manage the trust estate for the exclusive benefit of the beneficiaries, and return full value from the use and disposition of the trust property.
Nigh, 642 P.2d at 235 (emphasis added).
¶ 13 Noting the irrevocable sacred trust obligation imposed by the Enabling Act and the Constitution, the Supreme Court went on to hold that no act of the Legislature can diminish the State's duty as trustee to administer the trust assets in a manner designed to obtain the maximum benefit to the beneficiary:
 The express designation of the school lands and funds as a" sacred trust" has the effect of irrevocably incorporating into the Enabling Act, Oklahoma Constitution, and conditions of the grant, all of the rules of law and duties governing the administration of trusts.
 No Act of the Legislature can validly alter, modify or diminish the State's duty as Trustee of the school land trust to administer it in a manner most beneficial to the trust estate and in a manner which obtains the maximum benefit in return from the use of trust property or loan of trust funds.
Nigh, 642 P.2d at 235-36 (emphasis added).
¶ 14 Thus we see that the Commissioners of the Land Office, as managers of the State's sacred School Land Trust, have an obligation to manage the trust solely for the uses and purposes designated in the Enabling Act and Oklahoma Constitution, and further have an obligation to maximize returns from the use of the trust properties, and at the same time, comply with the conditions of the grant. One of the conditions of the grant of the School Land Trust properties is recognition of the preference right to purchase at the highest bid vested in lessees of the land at the time of sale.
¶ 15 The question you pose deals with the State's obligation to honor a current lessee's preference right to purchase, and at the same time, maximize the income from the sale of School Land Trust property.
 III. NATURE OF LESSEE'S PREFERENCE RIGHT TO PURCHASE, AND ADEQUACY OF THE PROPOSED BIDDING PROCEDURES IN PROTECTING THAT RIGHT
¶ 16 As stated above, the Enabling Act, at both Sections 9 and 10, provides for a "preference right to purchase at the highest bid being given to the lessee at the time of such sale." One of the conditions imposed upon the State in managing the School Land Trust property, under the principles discussed above, is giving force and effect to the lessee's preference right to purchase.
¶ 17 In accordance with this mandate, the Oklahoma Legislature, in enacting statutes dealing with the sale of School Land Trust property has provided for the lessee's preference right to purchase. In dealing with the sale of the lands reserved, granted or taken in lieu of "sections sixteen and thirty-six," "thirteen and thirty-three" and lands known as "indemnity land," the Legislature at 64 O.S. 1991, § 184[64-184] has provided that any lessee holding a preference right lease on any of the lands "shall have the preference right to purchase all of the lands so leased by him at the highest bid at the time of the sale, or in case of no bid, then to take the same at the appraised value."
¶ 18 At 64 O.S. 1991, § 193[64-193], in providing for the sale of School Land Trust lands located near or within the limits of cities and towns, the Legislature requires that "the lessee shall have the preference right to buy at the highest and best bid."
¶ 19 In general provisions, the Legislature has required at 64O.S. 1991, § 223[64-223], that "[a]ny lessee holding a preference right lease shall have the preference right to purchase the lands so leased by him at the highest bid at the time of the sale."
¶ 20 Both the Oklahoma Supreme Court and the United States Supreme Court have had occasion to discuss the nature of a lessee's preference right to purchase School Land Trust lands. InMagnolia Petroleum v. Price, 206 P. 1033 (Okla. 1922), a controversy developed between Magnolia Petroleum Company, which owned an oil and gas lease on some School Land Trust land, and a Mr. Price, who owned an agricultural lease on the same land. Operating under its oil and gas lease, Magnolia Petroleum Company sought to enter the land to drill a well. Price sought to prevent Magnolia from drilling, and refused to allow its employees to go on the land for that purpose. In resolving the dispute between Magnolia and Price, the district court entered an order finding that Price, by virtue of his agricultural lease, and the preference right to purchase when the land was sold, was the owner of all oil and gas, and that by virtue of such ownership, could keep Magnolia Oil Company from interfering with his ownership rights. Magnolia, 206 P. at 1034.
¶ 21 In reversing the district court's decision the Oklahoma Supreme Court recognized that Section 8 of the Enabling Act specifically empowered the State to grant oil and gas leases on School Land Trust property, and that under that provision agricultural lessees in possession of said land simply had a right to be reimbursed by the mining lessee for all damages done to said agricultural lessee's interest by reason of the mining operations. Turning to the preference right to purchase the land, the Court held that contrary to Mr. Price's contention, Mr. Price could not compel the State to sell the school land, but rather the State had the power to do so if it wished, and only when it, the State, saw fit. Magnolia, 206 P. at 1037-38.
¶ 22 The only rights that Mr. Price possessed were "those defined by his lease contract with the state and those defined by the laws of the state." Magnolia, 206 P. at 1039. Mr. Price, the Court held, "has no right under the law nor under his lease contract, to force the state to sell such lands until the states [sic] elects to do so." Id.
¶ 23 The Magnolia Court, then addressed the State's obligation:
 The state is bound by the terms of the Constitution and by the terms of the grant to protect [Mr. Price] in his preference right to re-lease if the land is re-leased, and the preference right to purchase, at the time of sale, if the land is sold. This is as far as the state is obligated to the lessee without violating the conditions of the grant itself, the uppermost purpose of the grant being to protect the school, educational and public building funds, for which purposes the land was granted to and accepted by the state.
Magnolia, 602 P. at 1039 (emphasis added).
¶ 24 On appeal to the United States Supreme Court the decision of the Oklahoma Supreme Court was upheld, in Price v. MagnoliaPetroleum, 267 U.S. 415 (1924). After examining various provisions of the Enabling Act, the United States Supreme Court concluded that the Act:
 [G]ave the state entire discretion as to the time of selling these lands and the extent to which they should be sold. . . . Plainly, it was not intended that the mere making of an agricultural lease should put the state at the mercy of the lessee, and require a sale of the land before its value had been ascertained or the available revenue derived from it. In short, the preference right to purchase given the lessee by the act was merely the preference right of purchasing the land in the condition in which it might be when and if the state chose to sell it; and not a right to compel the state to sell it either in its entirety or otherwise, whenever he wished to buy.
Price, 267 U.S. at 422-23 (emphasis added).
¶ 25 While not creating an ownership interest in the property, preference rights to purchase create a right in the lessee. That interest was initially described by the Oklahoma courts as an equitable interest. In Noel v. Barrett, 90 P. 12 (Okla. 1907), the Oklahoma Supreme Court held, in its first syllabi, that the preference right of a lessee to renew or re-lease school trust land was a valuable right "subject to sale and purchase." Building upon this principle, the Oklahoma Supreme Court, inClark v. Frazier, 177 P. 589 (Okla. 1919) held that a preference right to purchase constituted "an equitable estate" in the land, an option to purchase:
 It is clear that the preference right of a school land lessee to purchase the land is, in legal effect, an option. The lessee has a valid right to purchase an option. And an option, even before election to purchase by the optionee, is held to create an equitable estate in the optionee.
Clark, 177 P. at 593 (emphasis added).
¶ 26 A School Land lessee's preference right to purchase may be seen under the holding in Clark v. Frazier, not as vesting the lessee with an ownership interest in the land, but with an equitable interest — an option to purchase. It is not, however, an option enforceable at the will of the lessee.
¶ 27 In Anderson-Prichard Oil v. McBride, 109 P. 2 221 (Okla. 1941), the Oklahoma Supreme Court once again passed upon the nature of a preference right to purchase School Land Trust property, and in doing so clarified its definition of a preference as an equitable option:
 While in Clark v. Frazier, 74 Okl. 141, 177 P. 589, it was stated that the preference right was an option, and therefore an equitable estate in the land, it is apparent that such right is not in fact an option enforceable at the will of the lessee, and is not in the true sense an equitable interest or estate in the land.
Anderson-Prichard, 109 P.2d at 223 (emphasis added).
¶ 28 The Anderson-Prichard Court, in further discussing the nature of a preference right to purchase, discussed the duration or term of such a right, holding that the right does not extend beyond the terms of the lease, and thus terminates when the lease ends:
 Nor was such preference right of longer duration than the term of existing lease of plaintiff. From what has been said above as to the nature of the right, it plainly appears that it could be exercised only by a lessee, and therefore terminated at the expiration of the lease. If the State elected to re-lease the land, and plaintiff, by the exercise of his right under his present lease became the lessee of the new lease, the preference right which he enjoyed under the previous lease expired along with his other rights thereunder, and he received a similar right under the new lease. Obviously, the right did not continue or extend beyond the term of the lease under which plaintiff held the land, as it could be exercised only during the term of such lease.
Anderson-Prichard, 109 P.2d at 223-24 (emphasis added).
¶ 29 The preference right to purchase is thus not an ownership interest in the land, not a true equitable estate in the land, but merely an option which can be exercised by a current lessee if, and only if, the land is offered for sale during the term of an existing lease. Thus, if the Commissioners of the Land Office sought to sell the land after the expiration of a current lease, no procedure at all would be necessary to protect the preference right to purchase, as the preference right to purchase expires when the lease term expires.
¶ 30 If School Lands upon which a current agricultural lease exists is offered for sale during the lease term, then the current lessee possesses the right to purchase the land by matching the highest bid received. Neither the Enabling Act nor the Constitution however, requires or dictates how the bidding is to be conducted at the public sale to be held after the required appraisals are made.
¶ 31 In Seltzer v. Commissioners of the Land Office,258 P.2d 1172 (Okla. 1953), the Oklahoma Supreme Court held that by virtue of the "broad grant" of power in Article VI, § 32 of the Oklahoma Constitution, the Commissioners of the Land Office, are vested with "complete jurisdiction and charge of the sale, rental, disposal and management" of School Land Trust property and are, thus, vested with the power to reject any and all bids at the sale of State school land. Id. at 1172. Additionally, at 64 O.S. 1991, § 82[64-82](j) the Legislature recognized the power of the Commissioners of the Land Office to promulgate rules and regulations governing the sale of School Land Trust property. The Commissioners of the Land Office are, thus, clearly empowered to establish any auction procedures not contrary to law.
¶ 32 The auction procedure you inquire about may be adopted by the Commissioners, as it is not contrary to law. The auction procedure you suggest — a procedure designed to maximize the proceeds from the sale of the land — does not deprive a preference right holder of the right to match the highest bid. Rather the procedure you suggest is merely a means of arriving at the highest bid.
¶ 33 Under the procedure you inquire about, the bidding would be divided into two segments. First, an initial bidding procedure would be used to identify the highest initial bid. Second, a procedure to determine the highest final bid would be employed.
¶ 34 The initial bidding would be open to all members of the public, except the lessee, and once the highest initial bid was determined, only the preference right lessee and the person placing the highest initial bid, would participate in the second stage of the bidding. That bidding would continue until the preference right lessee either refused to match the highest bid or until, after the lessee met the then highest bid, no other bid is made. Under this procedure, no bid, no matter how high, would deprive the preference right holder of the right to match that bid and purchase the land at that price.
¶ 35 Under this procedure a preference right lessee would lose the land only when his competitor bid a price which the preference right holder was no longer willing to match. The procedure thus does not deprive the preference right lessee of the right granted him by the Enabling Act, is a means of maximizing the return to the School Land Trust, and is not contrary to any provision of the Enabling Act or the Oklahoma Constitution.
¶ 36 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The preference right to purchase School Land Trust property at the highest bid at the time of sale granted to school land surface lessees, during the term of their lease by Sections 9 and 10 of the Oklahoma Enabling Act, 34 Stat. 267, 274 (1906), and by 64 O.S. 1991, §§ 184[64-184], 193 and 223, is not an ownership right in property, is not a true equitable interest in property, but is a mere option, which may only be exercised if the State, through the Commissioners of the Land Office, sells the land upon which the lease is held, during the lease term.
 2. The Commissioners of the Land Office, in selling School Land Trust property must do so in a manner consistent with their obligation to maximize income from the use and sale of trust property, and must also use procedures which permit holders of current leases to exercise their right to purchase the land by matching the highest bid.
 3. A lease holder's preference right to purchase School Land Trust property expires when his or her lease expires. Thus, if the Commissioners of Land Office sell land after the expiration of a current lease, no procedure to protect the preference right to purchase is necessary as the preference right to purchase expires when the lease term expires.
 4. The Commissioners of the Land Office, in selling School Land Trust property, may use a two-tier auction procedure under which a first tier of bidding open to the general public is conducted to determine the highest initial bid, and a second tier of bidding is used to accommodate the right of a preference right lessee to match the highest bid. During the second tier, the party placing the highest initial bid and the holder of a preference right to purchase continue to bid until the preference right lessee is no longer willing to match the highest bid, or until the lessee meets the then highest bid and no higher bid is made. Such a procedure permits the Commissioners of the Land Office to comply with their obligation to obtain the highest price possible from School Land Trust property under Sections 7 through 12 of the Oklahoma Enabling Act, 34 Stat. 267, 272-274 (1906) and Article XI, §§ 1 and 2 of the Oklahoma Constitution; and, at the same time, enables a current lessee to exercise his or her right to match the highest bid under Sections 9 and 10 of the Oklahoma Enabling Act, and 64 O.S. 1991, §§ 184[64-184], 193 and 223, as no matter how high a competitor may bid, the holder of the preference right may purchase the land by matching that bid.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL