## ANDERSON-PRICHARD OIL COR- PORATION v. McBRIDE.

No. 28834.   Oct. 29, 1940.

Rehearing Denied Jan. 21, 1941.

*109 P. 2d 221.*

Jarman, Brown, Looney & Watts, all of Oklahoma City, for plaintiff in error.

J. D. Holland, of Norman, and Lee B. Thompson, of Oklahoma City, for defendant in error.

HURST, J.   Plaintiff, McBride, holder of a preference right lease on school land, brought condemnation proceedings against defendant, Anderson-Prichard Oil Corporation, holder of an oil and gas lease from the state on the same land, to recover damages for the drilling and operation by defendant of an oil and gas well on the property during 1936. Plaintiff's lease expired December 31, 1936. It was renewed for the year 1937, and in that year, defendant having completed two additional wells on the land, plaintiff brought another proceeding to recover the damages resulting from the drilling and operation of those wells. The cases were consolidated and tried to a jury, and from a verdict and judgment for plaintiff, defendant appeals.

The contentions of defendant may be reduced to three: (1) That plaintiff was not authorized to bring condemnation proceedings; (2) that the cases were improperly consolidated and tried together; and (3) that improper elements of damage were permitted to go to the jury.

1.   The proceedings were instituted by the plaintiff pursuant to the provisions of section 5592, O. S. 1931, 64 O.S. A. § 288. Defendant contends that this statute confers the right to institute the proceedings upon the oil and gas lessee only. The statute provides that the oil and gas *lessee* may condemn "under the law of eminent domain *to like extent and in the same manner* and *upon the same procedure and remedies* as is provided for the assessment of damages and compensation to the owner of the · fee in case of condemnation for railway purposes." Section 11931, O. S. 1931, prescribing the procedure to be followed

in ascertaining the damages to the landowner whose property is sought to be condemned for railway purposes, expressly provides that either party, the railroad or the landowner, may make application for the ascertainment of damages. The filing of the application or petition is procedural, and whether the petition be filed by plaintiff or defendant, the ascertainment of plaintiff's damages is the ultimate result. We think that when both sections of the statute are considered together, it may be reasonably inferred that the proceeding to ascertain the damages to the surface of the land may be initiated by either party. In Sudik v. Sinclair Oil & Gas Co., 172 Okla. 334, 44 P. 2d 954, the proceeding was commenced by the surface lessee, although the question was not apparently raised.

2. The consolidation of cases for the purpose of trial is discretionary with the trial court. Exchange Trust Co. v. Palmer, 163 Okla. 33, 20 P. 2d 897. As the consolidated cases involved the damage to the same land for two successive years, and the same parties, and as no substantial right of defendant is shown to have been prejudiced by the consolidation, we hold that the trial court did not abuse its discretion in ordering the consolidation.

3. Defendant's third contention is based primarily upon the submission to the jury of evidence showing the alleged loss and injury to plaintiff's "preference right." Over the objection of defendant that such evidence was improper, the trial court submitted it for the consideration of the jury, and the verdict reflects a substantial award therefor. Defendant urges that the trial court should have permitted evidence only of the usable value to plaintiff for the year 1936 of the portion of the leased premises taken by the operations of defendant during that year, and the usable value of the additional land taken in the year 1937 by defendant, together with the damage to plaintiff's improvements and crops, to be considered by the jury, as plaintiff's interest in the land was coexistent and coextensive only with such leases. Plaintiff contends that the jury could properly be permitted to consider the damage to the land occasioned by defendant's operations as diminishing the value of his preference right to renew his lease or purchase the property, for the reason that such right was an appurtenant, and added to the ordinary value, of his surface lease and improvements, and was an element of damage for which defendant was liable under section 5591, O. S. 1931, 64 O.S.A. § 287.

Section 5591 provides that the oil lessee shall be liable to the surface lessee for "all damages or loss accruing to the surface interest in said land, and to all crops and improvements thereupon, and appurtenances and hereditaments thereunto belonging." In a subsequent statute covering the same subject, section 28, art. 3, ch. 28, S. L. 1935, 64 O.S. A. § 92, it is provided that the agricultural lessee shall be reimbursed by the mining lessee "for all damage done to said agricultural lessee's interest therein by reason of such mining operations." While there is no contention that the latter statute superseded section 5591, it is apparent that the provisions of both designate substantially the same elements of damage for which the surface lessee is to be compensated by the oil and gas lessee. The question is therefore whether the preference right of the surface lessee is damaged or lost by reason of mining operations of the lessee of an oil and gas lease from the state. The state being the lessor in both leases, the assumption is that it contemplated that the rights of both lessees might exist and be enjoyed at the same time, and that the operations of the oil and gas lessee would not be violative of the provisions of the Enabling Act, which provided that the agricultural lessee should have a preference right to purchase the land in event it was sold by the state, and also provided that the land valuable for oil and gas might be leased for oil and gas purposes by the state.

The nature of the preference right of a lessee of school land to purchase or

re-lease such lands upon the expiration of his lease, its origin, and the various provisions of the Enabling Act, the Constitution, and the statutes in relation thereto, are exhaustively dealt with in Magnolia Petroleum Co. v. Price, 86 Okla. 105, 206 P. 1033, affirmed in Price v. Magnolia Petroleum Co., 267 U. S. 415. From the discussion in these cases it clearly appears that such right is not originally a right given by the Enabling Act, Constitution, and statutes to the school land lessee, but an obligation imposed upon the state by sections 9 and 10 of the Enabling Act, in event the land should be sold by the state while in the possession of a lessee under an existing agricultural and grazing lease. The state was not obligated to sell or re-lease the land, but if it elected to sell, it was required to give the lessee an opportunity to purchase at the highest bid therefor received by the state. If the state elected to re-lease the land, it was obligated by the terms of the lease to give the present lessee thereof the first opportunity to take such lease at the rental fixed under the statute, section 25, ch. 28, S. L. 1935, 64 O.S.A. § 89. It is therefore apparent that the exercise of the so-called preference right was dependent wholly upon the election of the state to re-lease or sell the land. If it elected to do neither, the obligation no longer existed.

The right to enforce this obligation, in event the state elected to sell the land during the term of his lease, or to re-lease it at the expiration thereof, was assured to plaintiff by the terms of the leases under which he held, and was his "preference right." Of course an important element of its value lies in the probability that the state will continue to keep the land leased for agricultural and grazing purposes, and as long as the state elects to do so the lessee has the prior right to continue to re-lease at the expiration of each lease. As was aptly stated in Price v. Magnolia Petroleum Co., supra, in reference to the right to purchase:

"* * * * There was no provision in the act, and none is implied, that the agricultural lessee might require the state to sell the land in its entirety whenever he desired to purchase the same; and nothing that gave him any right to purchase the land in its entirety, or that prevented the state from executing oil and gas leases, as well as agricultural leases, whenever it deemed this the most advantageous method of realizing the full value of the lands for the public purposes for which they were granted to it. Plainly, it was not intended that the mere making of an agricultural lease should put the state at the mercy of the lessee, and require a sale of the land before its value had been ascertained or the available revenue derived from it. In short, the preference right of purchase given the lessee by the act was merely the preference right of purchasing the land in the condition in which it might be when and if the state chose to sell it; and not a right to compel the state to sell it either in its entirety or otherwise, whenever he wished to buy."

While in Clark v. Frazier, 74 Okla. 141, 177 P. 589, it was stated that the preference right was an option, and therefore an equitable estate in the land, it is apparent that such right is not in fact an option enforceable at the will of the lessee, and is not in the true sense an equitable interest or estate in the land. 20 C. J. 1303. The cases cited in support of the statement in Clark v. Frazier, when examined, do not support it, as they involved options enforceable at the election of the holder thereof, and which did not, as here, depend upon the election of the grantor.

Nor was such preference right of longer duration than the term of the existing lease of plaintiff. From what has been said above as to the nature of the right, it plainly appears that it could be exercised only by a lessee, and therefore terminated at the expiration of the lease. If the state elected to re-lease the land, and plaintiff, by the exercise of his right under his present lease, became the lessee of the new lease, the preference right which he enjoyed under the previous lease expired along with his other rights thereunder, and he received a similar right under

the new lease. Obviously the right did not continue or extend beyond the term of the lease under which plaintiff held the land, as it could be exercised only during the term of such lease.

Such being the nature of the preference right, in what manner, or to what extent, was it lost or diminished by the operations of the defendant under its oil and gas lease? For while such right has been held a valuable right, and is the subject of sale (Noel v. Barrett, 18 Okla. 304, 90 P. 12) and is to be considered when the land is taken by condemnation proceedings (State v. Oklahoma Ry. Co., 153 Okla. 76, 4 P. 2d 1009), it must be shown to have been taken away or impaired before damages may be awarded for the loss or impairment thereof. There is no such showing in the present case. So far as the record shows, the preference right of plaintiff remains in full force and vigor. Plaintiff's theory seems to be that the operations of defendant have depreciated the value of the land for agricultural purposes, and that his preference right is depreciated in like proportion. But plaintiff's rights under his leases were expressly granted and received subject to the right of the state to enter upon and explore the land for oil and gas, and to operate the wells thereon if oil or gas should be found. There was no obligation on the part of the state to maintain the land in the same condition as it was when plaintiff's lease was made, but the preference right gave plaintiff only the right to purchase or re-lease the land, in its then condition, at the time the state chose to permit the exercise of that right by electing to sell or re-lease the land. Price v. Magnolia Petroleum Co., supra. Any damage to the agricultural value of the land by reason of the operations of the oil and gas lessee would be reflected in the reduction of the rental to be paid by the plaintiff under future leases, if the state chose to re-lease the land, or in a decrease of the purchase price if the state chose to sell it. To hold otherwise would be to extend the obligation of the state far beyond the liability imposed by law, and would in a measure deprive the state of the rights inhering in it by virtue of its ownership of the land, and expressly reserved to it both by law and by the reservation in plaintiff's leases. It would place the state at the mercy of the surface lessee. When plaintiff leased the land, and purchased or erected valuable improvements thereon, he did so with knowledge of the right of the state to explore and operate the land for oil and gas, and with knowledge that such use by the state might affect the agricultural value and use thereof. The making of improvements on the land by plaintiff cannot hamper or restrict the right of the state to develop and recover the oil and gas thereunder, since plaintiff took with notice of this right of the state.

From what we have said it follows as a necessary conclusion that defendant was not liable to plaintiff for any alleged injury to plaintiff's preference right, but was liable for damages suffered by plaintiff as the result of defendant's operations during the term of each lease. His lease for the year 1937 was made in view of the condition of the land when that lease became effective, and for that year he could recover only for additional damages resulting during that year from defendant's operations. Damages could be recovered only for the diminution in the usable or rental value of the land taken or injured, and the injury, if any, to the improvements and crops, by such operations, such damages to be ascertained in accordance with the ordinary and usual methods of ascertaining such damages.

Reversed, with directions to grant a new trial and proceed in accordance with the views herein expressed.

BAYLESS, C. J., and OSBORN, DAVISON, and NEFF, JJ., concur. WELCH, V. C. J., concurs in conclusion. RILEY and GIBSON, JJ., dissent. CORN, J., absent.