Arlie L. TOMLINSON, Plaintiff in Error,

v.

OKLAHOMA GAS AND ELECTRIC COM-PANY, a Corporation, Defendant in Error.

No. 37259.

Supreme Court of Oklahoma.

Dec. 18, 1956.

Hoel & Horton, Stillwater, for plaintiff in error.

Houston W. Reeves, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal arose out of an action in the nature of condemnation proceedings in reverse, instituted by plaintiff in error, as plaintiff in the trial court, against defendant in error, as defendant.

In said action, plaintiff, lessee of a quarter section of State land sought damages for injuries to his "leasehold estate and interest" in the leased premises, which allegedly resulted from defendant's construction of electric distribution lines over the land and a sub-station on a 243-foot square plot in its northwest corner. The injuries were alleged to have occurred in February, 1950. Defendant had originally constructed similar facilities on a 230-foot square plot, for which it obtained its original easement in 1926; but the original sub-station was removed in 1943, except for its concrete base, and (apparently, because said easement agreement provided that, if defendant ceased to use the land for that purpose, it would revert to the State, or its assigns), defendant procured its present easement under date of October 4th, 1949, covering the same location, but a space 13 feet larger in each dimension than the original one. This easement agreement, like the original one, given by the Commissioners Of The Land Office, provided that the defendant should settle with the agricultural lessee of the land for any damages sustained to "improvements and/or crops" by reason of its use of the land covered thereby.

Plaintiff's lease provided that he would use the land for agricultural and grazing purposes only, and that he would not cut or remove, or permit to be cut or removed, any "timber", without first obtaining written authority from the Commissioners Of The Land Office. The lease provided for an annual rental of $168.30, and gave plaintiff the right to remove any or all of his improvements, if he was not in arrears with the payment of rentals or assessments due under the lease. Among other things, the lease also gave plaintiff the preferential right to purchase the premises by the following provision:

"This lease is made subject to the right of the State of Oklahoma to sell and convey said land at any time and that upon such sale prior to the expiration of this lease, the same shall thereupon expire and the party of the second part, as *the lessee* of said land, *shall be entitled to purchase the same at the highest bid,* subject to such

conditions, restrictions, and exceptions as may be provided by law." (Emphasis ours.)

In constructing its new distribution lines and sub-station under the easement now in effect, defendant, by admission of the witness R. L. Sawyers, its right-of-way agent and surveyor, damaged the premises for which Sawyers offered plaintiff a total compensation of $67.50, the major part of which consisted of the following items: $10 for filling ruts made by defendant's trucks; $25 for 5 yards of chat to go on the driveway on the premises; $10 for necessary repairs to the fence; and $25 for cutting down trees.

After he and Sawyers were unable to reach an agreement on the total amount of his damages, plaintiff instituted the present action, claiming an "equitable estate or interest" in the premises, and ownership of said improvements thereon which he alleged consisted not only of the fence, but of trees planted by a former tenant along the fence row on the north side of the premises, for the purpose of making fence posts. Besides tearing up his driveway and tearing down his fence on the north side of the premises, plaintiff alleged that defendant cut approximately 250 posts.

When the case was tried, the evidence revealed that the "posts", referred to in the last aforesaid allegation, were the trunks of certain catalpa trees that had grown up between the outer boundary fence, along the west side of the farm, and the public, or section line, road. At the trial, plaintiff, relating the various ways in which the acts of defendant's agents and employees in clearing the way for, and constructing, the afore-mentioned installations, had damaged the premises, included the cutting down of the catalpa trees, referring to same as injuries to his "post orchard." Also, at least one of plaintiff's witnesses, who estimated the damages to the premises as high as $1,500 or $2,000, included in his estimate the destruction of these trees, and, in addition, the asserted diminishment of the value of plaintiff's aforesaid preferential right to purchase the premises.

It was also shown that when plaintiff's lease for the years 1946–1951 expired, and after the alleged damages involved herein, occurred, he was given a new 5-year lease on the same premises at an increased rental of $280 per year.

In his instructions to the jury, the trial court told them, among other things, by his Instruction No. 5, that, in assessing plaintiff's damages, they were not to consider any right plaintiff had, under his lease, to purchase the farm, in the event of its sale by the State, or his right of renewal thereunder, or the fact that he had renewed it. In said instruction, the jury was also told, that in said assessment, they were not to consider defendant's cutting of the trees and timber.

The general verdict and judgment assessed plaintiff's damages and recovery against defendant at the sum of $225. Plaintiff lodged the present appeal, urging, under two propositions, that the portion of the court's Instruction No. 5, above referred to, was error.

Under his Proposition No. I, he contends that said instruction's exclusion, from the jury's consideration, of the trees' destruction, was error; while, in his Proposition No. II, he makes the same separate contention about the similar exclusion from the jury's consideration of plaintiff's preferential right, under the lease, to purchase the farm.

█ In attempting to demonstrate error on the first ground, plaintiff argues both that such trees, as the catalpa trees involved, are planted and cultivated for the purpose of making fence posts, and are in the nature of a growing crop. He makes the additional claim that under Tit. 64, O.S. 1951, sec. 225.1, they are "improvements", whose value was included in the price paid the former lessee of the premises, and that they are now owned by him, as present lessee. This argument is supported by neither proof nor logic. While it is true that in the cited section of the statute, which prescribes the method of appraising for sale, lands covered by preference right leases

from the Commissioner's Of The Land Office, trees are mentioned as among the "improvements" that may be appraised separately from the land, when placed there by the lessee at his expense, there is nothing to indicate that such a provision is applicable to a case like the present one. Furthermore, there is no proof in this case that the value of the catalpa trees was included in any consideration plaintiff gave for the lease. Plaintiff's other argument, which assumes that the catalpa trees' only value lies in the fact that fence posts can be made from them, in effect, recognizes their value only as timber. Thus, his argument, whether wittingly or not, directly joins the issue with that of the defendant, who points to the lease's hereinbefore quoted prohibition against the lessee's cutting or removing any timber from the land (or permitting anyone else to do so) without permission of the Commissioners Of The Land Office, as conclusive evidence, that, under the lease, such product of the land belonged to the State, or lessor, rather than to the plaintiff, or lessee. We think this is a sound basis for defendant's contention. Accordingly, since plaintiff points to nothing constituting a direct contradiction of this interpretation of the lease, and it appears to be a logical one, we must hold that the above-described argument of plaintiff fails to demonstrate error in the trial court's Instruction No. 5.

■ Nor do we think said instruction was error because it excluded from the jury's consideration, his claimed right to renew the lease, or his preferential right (in the event of its sale) to purchase the same, as urged by plaintiff under his Proposition No. 2. Though, the preferential right of a State land lessee to purchase the land under his lease be recognized as a valuable property right, as plaintiff urges, citing Noel v. Barrett, 18 Okl. 304, 90 P. 12, it is only a contingent right, conditioned upon the event of its sale; and its value depends upon the condition of the land at the time of the happening of such event. In Anderson-Prichard Oil Corp. v. McBride, 188 Okl. 384, 109 P.2d 221, we held:

"The 'preference right' of a lessee of the surface of State School Land may be exercised by such lessee *only when* the State elects to sell or re-lease the land occupied by such lessee under his lease, *in the condition* in which such land may be *when sold or released*." (Emphasis ours.)

See also Price v. Magnolia Pet. Co., 267 U.S. 415, 45 S.Ct. 312, 69 L.Ed. 689, and other authorities discussed in the quoted case. Of course, as plaintiff points out, the cited cases involved school land leases where the rights of oil and gas lessees were a factor, but this circumstance has no bearing upon, nor detracts in any way from, the correctness of the above-quoted statement concerning the character of the preferential right with which we are here dealing. In view of this contingent character, and the fact that its value is measured at the time of the happening of the contingency, it must be presumed that if the rental value of the lease in effect at the time of the construction of defendant's present distribution lines and sub-station, included some amount for rental of the ground space occupied by these facilities, and the latter became diminished, and remained so, by such occupation at the time of said lease's expiration, this would be reflected in the rental at which plaintiff obtained his present renewal lease. If this holds true, then plaintiff has already been compensated for any damage to his right of renewal, by the amount his present rental figure was affected by defendant's facilities' occupation of a part of the same. By the same token, the value and market price of the same, in the event of its sale, would accordingly be reduced. Thus, to now allow him damages against defendant, for injuries to this preferential right, would presumably have the effect of giving him double compensation for the same injury. It must be assumed that the sum awarded plaintiff, by the jury's verdict, includes some amount for the rental value (for the period of the 1946 lease's term remaining

after defendant's installations) of the surface area, of whose use he was thereby deprived. At least there is no argument, or unequivocal showing, to the contrary.

In accord with the foregoing, we conclude that there is no substantial merit to the second ground, or theory, upon which defendant claims Instruction No. 5 was error. Neither of plaintiff's arguments have demonstrated the prejudice to him, required on appeal, for reversal on account of alleged errors in instructions.

The judgment of the trial court is therefore affirmed.