STATE ex rel. COM'RS OF THE LAND OFFICE v. WALL.

No. 34499.   June 5, 1951.

Rehearing Denied July 3, 1951.

*232 P. 2d 940.*

R. H. Dunn and Sam Hill, Oklahoma City, for plaintiff in error.

Cox & Buhrman, Blackwell, for defendant in error.

LUTTRELL, V.C.J. This is an appeal by the Commissioners of the Land Office from a judgment of the district court of Kay county, setting aside an order previously made by the Commissioners forfeiting a preference right lease made by them to Robert L. Wall.

The essential facts are that on March 4, 1947, the Commissioners and Wall entered into an agricultural lease covering a quarter section of land in Kay county, the lease running for a term of five years and providing for rentals of $408 on the 1st day of January, 1947, and a similar rental each year up to and including 1951. Wall paid the first year's rental under this lease, but failed, neglected, and refused to pay any rentals for 1948 and 1949, whereupon the Commissioners, after due notice as required by law, forfeited said lease. Wall appealed from the order of forfeiture to the district court of Kay county which vacated the order. The specific ground upon which the trial court predicated its action was that the Commissioners in fixing the annual rental in Wall's lease based it upon the value of the property as fixed by an appraisal made without express legislative direction in 1946, which increased the valuation and consequently the rental above that fixed in Wall's prior lease, which was based upon an appraisal made in 1941 at the direction of the Legislature. The trial court corrected and reformed the lease by changing the amount of the rental provided therein from $408 per annum, which amount was based on the 1946 appraisement, to $192 per annum, this amount being based on the 1941 appraisal, and in effect held that the Commissioners were without power to reappraise the land in 1946.

While various procedural questions are urged by the Commissioners on this appeal, the decisive question presented for determination is whether the Commissioners of the Land Office have the power or authority to appraise lands covered by preference right leases in order to determine what would constitute a reasonable rental thereof without being expressly directed to do so by the Legislature. The Commissioners contend that they are vested with such authority, and Wall contends that they are not.

Because of the importance of the question, we have examined the various provisions of our legislative acts involving the making of leases upon these public lands by the Commissioners of the Land Office, and the various acts directing them to appraise these properties, and we think a brief resume of the various acts of the Legislature dealing with this question is proper.

In 1908, at the first session of the Legislature after statehood, the Legislature enacted House Bill No. 414, S. L. 1907-1908, ch. 49, art. 2, p. 484, providing that it should be the duty of the Commissioners of the Land Office to cause an appraisement to be made as soon as practicable of all lands granted to the state for educational and public building purposes.. It then set forth with some particularity the manner in which said appraisement should be made, and what should be shown therein. It also provided that the Commissioners should make a detailed and summarized report of all the statistics obtained by such appraisement at the next session of the Legislature.

In 1909, S. L. 1909, p. 440, the Legislature passed an act providing that the rental per annum for leases on such lands should be fixed at 4 per centum on the actual cash value thereof, exclusive of improvements, as returned

by the appraisers for the year 1908. It further provided that leases should run for a term of ten years, and that during the last half of each fifth and tenth year of such leases, the leasehold should be reappraised "in the manner now provided by law," and the rental price changed accordingly. Thereafter it does not appear that the Legislature specifically directed the reappraisement of these lands until 1925. In that year, by Senate Bill No. 11, S. L. 1925, p. 4, it directed the Commissioners of the Land Office to appraise all lands then owned by the state, granted to the state for educational and public building purposes, and certain other properties. It also provided for nine appraisers who were to serve until October 1, 1925, and provided that the rental price for lands for the five year period beginning January 1, 1926, and ending December 31, 1930, should be fixed at 4 per cent of the actual cash value returned by the appraisers under the appraisement therein provided for.

In 1935, S. L. 1935, p. 116, §25, 64 O. S. 1941 §89, the Legislature again provided for the rental of public lands by the Commissioners for terms of five years at an annual rental of 4 per centum of the appraised value of the land, exclusive of improvements. It then used the following language:

"The land departmental appraisement of such lands shall be the basis of rental and including the year 1935, or until said lands be appraised again, which the Commissioners of the Land Office are directed to do during the year 1935, and in no event later than the month of September, 1936."

For some time prior to the enactment of this law, the Legislature had provided for district land appraisers for the farm loan division of the School Land Commission, and in the 1935 act, by section 5 thereof, it provided that "the positions herein created and any other positions heretofore created are hereby made interchangeable among the several divisions of the Commissioners of the Land Office," at the discretion of the Commissioners and the secretary. In this act and in subsequent acts, it made no provision for the appointment of appraisers to carry out the appraisal directed to be made, evidently assuming that the Commissioners would use its own personnel in making such appraisement.

In 1941, by S. L. 1941, ch. 1(c), §1(g), p. 299, 64 O.S. 1941 §87(g), the Legislature again directed the making of a "late and up-to-date appraisal of all lands now covered by preference right leases." It provided that such appraisal should be made by at least two appraisers appointed for the purpose by the Commissioners of the Land Office, and authorized the expenditure of $5,000 out of the depletion, management, and sale fund, established by the act, for the purpose of paying the traveling and other incidental expenses in making the appraisal. It further provided that the appraisement should be used and followed by the Commissioners of the Land Office in fixing the annual rental value of preference right lease lands, and that such lands could be leased by the Commissioners for a term of five years, at an annual rental of not less than 3 per cent of the appraised value of the land, exclusive of improvements.

By S. L. 1943, Title 64 O.S. 1941, §86.1, the Legislature provided that the rental for preference right lands should be equal to 3 per cent of the fair cash market value thereof, exclusive of improvements, as determined and fixed under the provisions of section 86, Title 64, O.S. 1941, and further provided that whenever the market value of the land was greater than its market value for the purpose for which it was being leased, a rental of 3 per cent of its value for the purpose to which it is or may be devoted should be charged.

In 1945, the Legislature, in the general appropriation bill, S. L. 1945, p. 460, made an appropriation of $5,000 for "travel and incidental expense in reappraisal of original grant land." No law was passed at this session of the

Legislature specifically directing the reappraisal of the lands for which the appropriation was made.

Wall contends that since art. 6, §32, of the Constitution, provides that the Commissioners of the Land Office shall have charge of the sale, rental, disposal, and management of the school lands and other public lands "under rules and regulations prescribed by the Legislature," the Commissioners of the Land Office have no power or authority to make an appraisement of the lands placed under their management, unless and until they are expressly authorized and directed by the Legislature to do so. He calls attention to the statement in Knapp v. State, 196 Okla. 513, 166 P. 2d 86, as follows:

"Section 10 of the Enabling Act provides the lands may be leased for periods not to exceed five years 'under such rules and regulations as the Legislature . . . . may prescribe' and section 32, Art. VI of the Constitution provides the defendant shall 'have charge of the sale, rental, disposal and managing of the school lands . . . under rules and regulations prescribed by the Legislature.' The Legislature has from time to time directed reappraisal for rental purposes and was fully empowered to do so and in its discretion may provide for appraisement for the purpose by two appraisers. This power naturally flows from its ownership, control and management of the property."

He points out that in the 1943 act above referred to, the Legislature expressly directs that the rental on preference right leases shall be based on the appraisement made in 1941, as indicating the legislative intent to make a specific grant of power in 1941 to the Commissioners to appraise the lands, and as negativing the existence of such power or authority in the Commissioners independently of direct authorization by the Legislature. With this contention we are unable to agree.

By art. 6, §32, of the Constitution, it is provided that the Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and the President of the Board of Agriculture shall constitute the Commissioners of the Land Office, and that they shall have charge of the sale, rental, disposal, and management of the school lands and other public lands of the state, under rules and regulations to be prescribed by the Legislature.

A careful study of the various acts of the Legislature, and the constitutional provision above set forth, convinces us that the power of appraisal of state lands, in order to arrive at the amount of a reasonable rental therefor, was a necessary incident to the management, leasing, and disposal of said lands vested in the Commissioners of the Land Office by the constitutional provision above referred to, and that nothing in the legislative acts was intended to restrict such incidental power or authority, but rather to direct its exercise, by requiring the making of blanket or complete appraisals of all such lands, when in the judgment of the Legislature such action was considered advisable as an additional precaution in order to enable the Commissioners of the Land Office to charge and collect rentals based upon the market values at the time the leases were made. Obviously, if, as contended by Wall, the appraised value of the lands in 1908 governed the fixing of rentals on such lands until 1925, the Legislature would be derelict in its duty to derive from these lands the greatest amount of money reasonably possible for the schools of the state, since it is a matter of common knowledge that the value of such lands in Oklahoma for agricultural purposes greatly increased during that period of time. The same observation might be made as to conditions between the passage of the 1941 act and the making of new leases in 1947. The fact that the Legislature in 1909 provided that during the last half of each fifth and tenth year during the lifetime of any lease the lease should be reappraised; the provision in the 1935 act that the Land Department ap-

praisement should be the basis of rental until the lands be appraised again, which the Commissioners were directed to do during the year 1935, and the further fact that in 1945 the Legislature, without specifically directing a mass or blanket appraisement of such lands, appropriated the sum of $5,000 for travel and incidental expenses in reappraising the lands, which, of course, could be used for no purpose, except to reappraise the designated lands, all indicate that the Legislature understood that such power was vested in the Commissioners, and undertook, not to specifically confer such power upon the Commissioners, but to direct them in the exercise thereof, and that when the Legislature made the appropriation in 1945 without specifically directing the reappraisement it did so with the reasonable assurance that the Commissioners would expend the sum so appropriated for the purpose for which it was granted. This the Commissioners did, and the value of such action is shown by the fact that appraisements reflected a material increase in the value of the lands, and materially increased the amount of rent which the Commissioners could collect therefrom under the percentage figure fixed by the 1941 act. The only requirements that appraisals previously directed to be made by the Legislature should be used as a basis for the fixing of rentals are contained in the 1909 and 1943 acts. Obviously, these acts directed the use of the previously made 1908 and 1941 appraisements because of the short time which had elapsed after the appraisement was made. We find nothing in them to indicate that the Legislature intended that they should continue to be used for such purpose until the further direction of the Legislature.

It is inconceivable to us that a commission composed of five of the highest officials of the state, entrusted with the duty of managing said lands to effectuate the purposes for which they were granted to the state, that is, to provide funds for the use of the common schools of the state, should be so hampered or restricted in management and operation of such properties that they were not permitted to place a valuation upon the lands for the purpose of renting them for agricultural purposes unless they were expressly authorized to do so by the Legislature. We find nothing in the Constitution or laws of the state prohibiting the exercise of such power by the Commissioners, and, as above stated, it was necessarily incident to the proper performance of their trust. By the exercise of this power the state is assured of adequate rentals on the leased lands, regardless of the fluctuating value thereof. If a preference right lessee conceives that the valuation is excessive, and that thereby he is required to pay more than a reasonable rental for land covered by his lease, he is protected by the right of appeal provided in 64 O.S. 1941 §244, first, to the district court of the county in which the land is located, and from that court to this court. Thus the rights of both the state and the lessee are protected.

Reversed, with directions to render judgment sustaining the order of forfeiture.

ARNOLD, C.J., and CORN, GIBSON, DAVISON, HALLEY, JOHNSON, and O'NEAL, JJ., concur.

Rehearing Denied July 3, 1951.