The Attorney General is in receipt of your request for an opinion wherein you ask the following question: "May the Legislature of the State of Oklahoma limit the discretion of the Commissioners of the Land Office by limiting any rental increases for Commissioners of the Land Office agricultural and grazing leases to 10% annually, as provided by Enrolled House Bill No. 1144 (Thirty-seventh Legislature, First Regular Session, approved May 24, 1979)?" The title to House Bill No. 1144 as introduced, states: "An act relating to the Commissioners of the Land Office and making an appropriation thereto; stating the purpose; providing for appointment, duties and compensation of necessary employees; limiting the salary of the Secretary of the Commission; limiting numbers of employees; limiting expenditures for salaries and wages; providing procedures for expenditure of funds; providing lapse date; providing severability; and declaring an emergency." The title of Enrolled House Bill 1144 effective May 30, 1979, states: "An act relating to the Commissioners of the Land Office and making an appropriation thereto; stating the purpose; provided for appointment, duties and compensation of necessary employees; limiting the salary of the secretary of the commission; limiting number of employees; limiting expenditures for salaries and wages; expressing legislative intent to limit increases in certain rental charges; providing procedures for expenditure of funds; providing lapse date; providing severability; and declaring emergency." Section 3 of Enrolled House Bill No. 1144 states: "It is the intent of the legislature that rentals charged by the Commissioners of the Land Office for farm lands within their control increase no more than ten per cent (10%) during the fiscal year ending June 30, 1980." Section 9 of the Enabling Act sets out the disposition of school lands: "That said sections sixteen and thirty-six, and lands taken in lieu thereof, herein granted for the support of the common schools, if sold, may be appraised and sold at public sale in one hundred and sixty acre tracts or less, under such rules and regulations as the Legislature of said State may prescribe, preference right to purchase at the highest bid being given to the lessee at the time of such sale, the proceeds to constitute a permanent school fund the interest of which only shall be expended in the support of such schools. But said lands may, under such regulations as the Legislature may prescribe, be leased for periods not to exceed ten years; and such lands shall not be subject to homestead entry or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only. June 16, 1906, c. 3335, 9, State. 274." Article XI, Section 2 of the Oklahoma Constitution creates the "permanent school fund" with the principal being a grant from the U.S. Government of land in Oklahoma territory and a grant of $5,000,000.00 in lieu of corresponding land in Indian Territory. Both grants were made in trust and accompanied by inviolable conditions. The fund may be increased but never diminished, the State is responsible for any losses incurred in any manner and may not divert the funds for any other use. In State v. Comm. of Land Office of the State of Oklahoma, Okl. 301 P.2d 655 the syllabus by the Court states: "The regulations in the Oklahoma Enabling Act, Act of Congress, June 16, 1906, touching the care and disposition of lands and moneys granted in trust by the United States to the State, and providing that the proceeds to be derived from a sale of such lands, and the proceeds from the sale of oil and gas leases on such lands, shall be held and kept by the State in Trust, and that only the interest or earnings of such trust funds may be expended or used, and for the benefit of common schools and certain educational institutions of the State, are not conditions qualifying political rights of the new State, but pertain to proprietary rights of the United States and are within the regulating power of Congress, as a condition of admission to Statehood and after admission to Statehood. Such regulations exist as valid laws of the United States and may not be modified or changed by an Act of the Oklahoma Legislature or the people of Oklahoma in amendment of the Oklahoma Constitution." If the Commissioners of the Land Office violated any of these conditions or dissipated any of the funds, then this would constitute grounds for a termination of the trusteeship and a withdrawal of the funds by the Federal government. Article VI, Section 32
of the Oklahoma Constitution provides for the creation of the Commissioners of the Land Office, a constitutional agency which is to manage and control school land and other public lands of the State under the rules and regulations prescribed by the Legislature. That legislative enactments prescribing rules and regulations for the rental of lands such as are involved here may not in all situations be controlling, especially when the enactment lessens the revenues to be paid the common schools of the state, etc., is revealed by the case of Betts v. Commissioners of the Land Office, Okl. 110 P. 766
(1910), wherein the sixth paragraph of the syllabus is as follows: "It is neither permissible for the Commissioners of the Land Office, either with or without an enactment of the Legislature, to utilize any part of the proceeds of the rentals derived from the leasing of the lands granted by the general government to the state for the use and benefit of the common schools * * * in order to pay the expenses of the sale of said lands, or of loaning, investing, or reinvesting the permanent school fund." In relation to said question, we call attention to the following cases: State ex rel. Comr's of the Land Office v. Board of Comr's of Woods County, Okl. 257 P. 778
(1927); Popp et al. v. Munger, et al. Okl. 268 P. 1100
(1928); and State ex rel. Comr's of the Land Office v. Wall, Okl. 232 P.2d 940 (1951); which in effect express the view that under the principles of law announced in said cases, the State of Oklahoma, as the trustee of the land involved here "for the use and benefit" of the common schools, etc., of the state, owes the beneficiaries of said trust its "undivided loyalty and good faith," that "all of the acts as trustee must be in the interest of the cestui que trust, and no one else." In this connection it will be noted that in the Woods County case, supra, the Supreme Court of Oklahoma held that: "* * * the common school fund does not belong to the state, but the state merely holds such fund in trust under the conditions of the federal grant contained in the Enabling Act. The school funds were merely entrusted for the benefit of the common school, and the state pledged itself to hold such trust inviolate for the benefit of the schools." In the Popp v. Munger case, supra, our State Supreme Court in effect held that under the constitutional power of the Commissioners of the Land Office "to dispose of, manage, control and administer the fund for the purpose of its creation," to-wit: for the purpose of having the revenues thereof "applied to the education of the school children of Oklahoma, said Commissioners had authority: 1. to sell a delinquent farm loan mortgage for the amount due, even though they had not been authorized to do so by a rule or regulation prescribed by the legislature, and 2. in order "to secure prompt payment" of amounts due under such a mortgage, to charge ten per cent (10%) interest thereon "after default," even though the pertinent statute stated that "interest on said farm loans shall not exceed five per cent (5%) per annum." As a trustee of public school lands and income derived therefrom the State is required to administer the trust estate under the rules of law applicable to trustees acting in a statutory capacity. A breach of the duties imposed upon the State as trustee by virtue of the constitution as such is a violation of the Constitution itself. The Legislature is authorized to provide by statute the terms upon which the public lands of the State may be leased, but such terms must be consistent with the duties and functions of a trustee acting in a fiduciary capacity. The Commissioners as trustees must keep the trust assets segregated and carry out the directions of the settlor and owe the beneficiaries of its trust its undivided loyalty and good faith and its acts must be in the sole interest of the beneficiary. In the Wall case, supra, the Supreme Court of Oklahoma held in the syllabus thereof, as follows: "The Commissioners of the Land Office as a necessary incident to the duties imposed upon them by Article VI, Section 32, of the Constitution, * * * may cause lands covered by preference right leases to be appraised at or shortly prior to the expiration of such leases, without being specifically directed to do so by the Legislature, in order that the rentals of such new leases, which the Legislature has required to be fixed at a percentage of the appraised value of the land, may be based upon the lands present value." In the body of the opinion of said case it is stated: "It is inconceivable to us that a commission composed of five of the highest officials of the state, entrusted with the duty of managing said lands to effectuate the purposes for which they were granted to the state, that is, to provide funds for the use of the common schools of the state, should be so hampered or restricted in management and operation of such properties that they were not permitted to place a valuation upon the lands for the purpose of renting them for agricultural purposes unless they were expressly authorized to do so by the Legislature. We find nothing in the Constitution or laws of the state prohibiting the exercise of such power by the Commissioners, and, as above stated, it was necessarily incident to the proper performance of their trust. * * *" The school fund is a perpetual fund created by the general government and given to the State. It is incumbent upon the trustees of the fund to achieve the greatest amount of money reasonably for the schools of the State. The value of lands in Oklahoma for agricultural purposes has greatly increased which must be reflected in the rents which the Commissioners must collect. The Legislature may not prohibit the Commissioners of the Land Office, as the Constitutional agency of the State of Oklahoma, the trustee of said land, from securing all the revenue it would safely secure from the trust estate for the use and benefit of the common schools of the State and the other constitutional beneficiaries thereof. It is, therefore, the official opinion of the Attorney General that Section 3 of House Bill No. 1144 Thirty-seventh Legislature, First Regular Session, Approved May 24, 1979, is ineffective insofar as it directs the Commissioners of the Land Office to limit increases in rentals on Land Office agricultural and grazing leases on school lands. (VICTOR G. HILL, JR.) (ksg)