Dear Senator Rabon,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following questions:
1. May the Commissioners of the Land Office lawfully utilizethe permanent school funds to purchase timberland or other realestate?
 2. If so, are there any restrictions imposed by law on suchpurchases?
 I. Nature Of The School Land Trust And Oklahoma's Acceptance Of The Trust Property
¶ 1 In 1906 Congress passed the Oklahoma Enabling Act, providing that upon admission of the State of Oklahoma into the Union certain property and monies would be granted by the federal government to the new State to be held in trust for the use and benefit of schools, universities and other public institutions.See Enabling Act, ch. 3335, §§ 7-12, 34 Stat. 267, 272-75 (1906).
¶ 2 In adopting the State Constitution, the people of the State of Oklahoma accepted the lands granted to them in the Enabling Act and pledged to "preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated." Okla. Const. art. XI, § 1.
¶ 3 The Constitution established the Commissioners of the Land Office ("Commissioners"), composed of the Governor, Secretary of State,[1] State Auditor, Superintendent of Public Instruction and the President of the Board of Agriculture, to act as trustees for the State in administering the lands and funds. Okla. Const. art. VI, § 32. The Commissioners have charge "of the sale, rental, disposal and managing of the school lands and other public lands of the state, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature." Id.; see also State ex rel. Land Office Comm'rsv. Wall, 232 P.2d 940, 943 (Okla. 1951).
¶ 4 Article XI, § 2 of the Oklahoma Constitution established a "permanent school fund" and provided that the fund shall consist of (1) "[a]ll proceeds of the sale of public lands that have . . . been or may be . . . given by the United States for the use and benefit of the common schools"; (2) "all such per centum as may be granted by the United States on the sales of public lands"; (3) "five million dollars appropriated to the State for the use and benefit of common schools"; (4) "the proceeds of all property that shall fall to the State by escheat"; (5) "the proceeds of all gifts or donations to the State for common schools"; and (6) "such other appropriations, gifts, or donations as shall be made by the Legislature for the benefit of the common schools." The income of the permanent school fund is to be "used for the maintenance of the common schools in the State."
¶ 5 The Constitution provided that the principal of the fund shall "forever remain inviolate" and that `[i]t may be increased, but shall never be diminished." Id. The State must reimburse the fund for any losses and the fund is not to be diverted for any use, other than the maintenance of common schools. Id.
¶ 6 In Oklahoma Education Association v. Nigh, 642 P.2d 230
(Okla. 1982), the Oklahoma Supreme Court struck down five statutes as unconstitutional which restricted the management of the school land trust property. In so doing, the court held that the State's acceptance of the trustees, under the terms and conditions specified in the Enabling Act, constituted an "irrevocable compact" between the United States and the State of Oklahoma. Id. at 235. The court found that no disposition of the lands or funds could be made which conflicted with the terms and purposes of the grant in the Enabling Act, or the provisions of the Constitution relating to the land funds. Id. The court recognized that "[t]he State has an irrevocable duty, as Trustee, to manage the trust estate for the exclusive benefit of the beneficiaries, and return full value from the use and disposition of the trust property." Id. The Commissioners are required to administer the estate in a manner which obtains the maximum benefit in return from the use of trust property. Id. at 236.
¶ 7 Your question concerns the Commissioners' authority to invest the permanent school fund. You ask whether the fund may be used to purchase timberland or other real estate.
 II. The Provisions Of The Oklahoma Enabling Act
¶ 8 Sections 7, 9 and 10 of the Enabling Act speak to the sale, investment and leasing of land granted to the State for the use and benefit of the common schools. See Enabling Act, §§ 7, 9, 10 at 272-74. Section 7 provides that upon admission of the State into the Union "sections numbered sixteen and thirty-six, in every township in Oklahoma Territory, and all indemnity lands heretofore selected in lieu thereof, are hereby granted to the State for the use and benefit of the common schools[.]" Id. § 7, at 272. Section 7 appropriates a sum of five million dollars to be "held and invested" by the State in trust for the use and benefit of the common schools and provides that the interest shall be used exclusively in the support and maintenance of the schools. Id. (emphasis added). Section 9 provides that these lands may be appraised and sold at public sale in one hundred and sixty acre tracts or less and that the proceeds of the sale of these lands shall "constitute a permanent school fund, the interest of which only shall be expended in the support of such schools." Id. § 9 at 274. The Enabling Act also allows for certain land to be leased under "such [rules and] regulations as the legislature may prescribe." Id. In granting these lands to the State, Congress recognized the State's power to sell the land and to invest the interest from the trust fund.
¶ 9 Two significant principles emerge from these provisions. First, the Commissioners may not act without rules and regulations set by the Legislature. The Commissioners of the Land Office are constitutionally authorized to "have charge of the sale, rental, disposal and managing of the school lands and other public lands of the state, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by theLegislature." Okla. Const. art. VI, § 32(A) (emphasis added). InBetts v. Commissioners of the Land Office, 110 P. 766, 770
(Okla. 1910), the Oklahoma Supreme Court interpreted this constitutional provision in the context of leasing State lands, finding that the board has no inherent power to act, other than under rules and regulations existing under "the territory of Oklahoma continued in force by virtue of section 10 of the enabling act, or by rules and regulations as prescribed by the Legislature of the state." The court rejected the argument that the board had the power to lease the State lands so as to secure the maximum amount allowed for leasing, finding that the provision reserving the right to the Legislature to prescribe regulations would be useless if the regulations could be ignored to secure greater revenue. The court noted:
 Section 32, art. 6, supra, has the effect of placing the control of the sale, renting, and managing of the school lands and other public lands of the state and of the funds and proceeds derived therefrom in the hands of the Commissioners of the Land Office, but with the limitation that they shall act only under rules and regulations prescribed by the Legislature.
Id. at 770-71.[2] The court authorized the expenditure of funds by the Commissioners without prior legislative approval only because the Legislature had not yet acted. The court limited the authorization of the Commissioners to expend funds only until such time as the Legislature did act.
¶ 10 Second, the Legislature may not enact laws which conflict with the terms and purpose of the grant of the Enabling Act. In 1956, the Oklahoma Supreme Court discussed the power of the Enabling Act regulations and stated that they "exist as valid laws of the United States, which may not be modified, restricted or changed by an Act of the Oklahoma Legislature or the people of Oklahoma in amendment of the Oklahoma Constitution." State exrel. Williamson v. Comm'rs of the Land Office, 301 P.2d 655,659 (Okla. 1956). This principle was reiterated in Nigh where the court held:
 No act of the Legislature can validly alter, modify or diminish the State's duty as Trustee of the school land trust to administer it in a manner most beneficial to the trust estate and in a manner which obtains the maximum benefit in return from the use of trust property or loan of trust funds.
Nigh, 642 P.2d at 236.
¶ 11 The Commissioners, as managers of the sacred trust, have an obligation to manage the trust solely for the uses and purposes designed in the Enabling Act, and have an obligation to maximize returns from the use of the trust properties. Under this authority, timberland or other real estate investments could be authorized only if such investments fulfilled the manifest objective of the Enabling Act provisions to obtain maximum benefit in return from the use of trust funds. Whether the purchase of timberland or other real estate would meet this high burden of obtaining the maximum benefit in return from the use of trust funds is a question of fact which cannot be answered in an Attorney General Opinion, as opinions are limited to answering questions of law. 74 O.S. 2001, § 18b[74-18b] (A)(5).
¶ 12 Even assuming such investments would provide the maximum benefit to the trust beneficiaries, those managing the sacred school land trusts are not authorized to make such investments absent rules and regulations prescribed by the Legislature. Enabling Act, § 9, at 274. We must, therefore, determine whether the Oklahoma Legislature has authorized the purchase of timberland or other real estate.
 III. Constitutional And Statutory Provisions Regarding The School Fund Trust
¶ 13 As stated, no disposition of school trust lands or funds can be made that conflicts either with the terms and purposes of the grant in the Enabling Act, or the provisions of the Constitution relating to such lands and funds. Nigh,642 P.2d at 235. Thus, a review of the Oklahoma Constitution and statutes is in order.
¶ 14 The Oklahoma Constitution designates the Commissioners at Okla. Const. art. VI, § 32(A). At Okla. Const. art. XI, § 6(B), the Constitution provides for the investment of permanent common school and other education funds. Prior to 1986, the portion of Okla. Const. art. XI, § 6 applicable to your question provided:
 The permanent common school and other educational funds shall be invested in first mortgages upon good and improved farm lands within the state (and in no case shall more than fifty per centum (50%) of the reasonable valuation of the lands without improvements be loaned on any tract), Oklahoma State bonds, county bonds of the counties of Oklahoma, school district bonds of the school districts of Oklahoma, promissory notes evidencing federal and state insured loans made to students under any federal or State of Oklahoma insured student loan program, and United States bonds, preference to be given to the securities in the order named. The said funds may also be invested in deposits in banks or trust companies in Oklahoma to the extent such deposit is insured by the Federal Deposit Insurance Corporation.
Okla. Const. art. XI, § 6 (1985).
¶ 15 In 1986, the Constitution was amended for the final sentence quoted above to read, "[t]he said funds may also be invested in deposits in federally insured financial institutions or trust companies in Oklahoma to the extent such deposit is insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or the National Credit Union Administration." Okla. Const. art. XI, § 6 (1986).
¶ 16 In 1994, the provision was amended to read as it does today:
 A. The permanent common school and other educational funds may be invested in first mortgages upon good and improved farm lands within the state (and in no case shall more than fifty per centum (50%) of the reasonable valuation of the lands without improvements be loaned on any tract) and any other investments as authorized by law.
 B. The Commissioners of the Land Office shall be responsible for the investment of the permanent common school and other educational funds, and public building funds solely in the best interests of the beneficiaries and:
 1. For the exclusive purpose of providing maximum benefits to current and future beneficiaries, and defraying reasonable expenses of administering the trust funds;
 2. With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like enterprise of a like character and like aim would use;
 3. By diversifying the investments of the trust funds so as to minimize the risk of large losses; and
 4. In accordance with the law, documents and instruments governing the administration and investment of the permanent common school and other educational funds and public building funds.
 C. The Legislature shall provide by law conditions upon which the permanent common school fund, other educational funds and public building funds may be loaned or invested and shall do all things necessary for the safety of the funds and permanency of the investment.
Okla. Const. art. XI, § 6 (1994) (emphasis added).
¶ 17 The Oklahoma Legislature has established the conditions upon which the permanent school funds may be invested by providing in Title 64 for certain powers and duties of the Commissioners. Title 64 O.S. 2001, § 51[64-51] (B)(3) requires that the Commissioners establish an investment committee to make recommendations to the Commissioners on "all matters related to the choice of managers of the assets of the funds, on the establishment of investment and fund management guidelines, and in planning future investment policy. . . . The Commissioners shall promulgate and adopt on an annual basis an investment plan. The investment plan shall state the criteria for selecting investment managers, the allocation of assets among investment managers, and established standards of investment and fund management." Id. The statutes require that, "[b]y August 1 of each year, the Commissioners shall develop a written investment plan for the trust funds." Id. § 51(B)(6).
¶ 18 The Legislature has enacted specific legislation regarding the subject matter of investments of permanent school funds and other educational funds. Section 51(A)(1) allows permanent school funds and other educational funds to be invested in first mortgages upon "good and improved farm lands within the state." Section 51(B)(2) provides that the permanent school fund and other educational funds may only be invested in "bonds issued in the United States and United States dollar denominated or other investments settled in United States dollars or traded on the United States exchange markets." There is no authority under either of these provisions for investing in timberland or other real estate.
¶ 19 One might question whether "other investments settled in United States dollars" includes investments in timberland or other real estate. Id. § 51(B)(2). We conclude that it does not. The rule of ejusdem generis provides that in considering the meaning of a statute, general words following words of particular description are limited in meaning to the scope of the particular words. State ex rel. Comm'rs of the Land Office v.Butler, 753 P.2d 1334, 1336-37 (Okla. 1987); Powers v.Carson, 567 P.2d 90, 92 (Okla. 1977). Thus, where the phrase "or other investments settled in United States dollars or traded on the United States exchange markets" follows the phrase "may only be invested in bonds issued in the United States and United States dollar denominated," the general word "investments" should be construed as applicable only to the same kind of investments as those specifically named, i.e. bonds or securities. 64 O.S.2001, § 51[64-51] (B)(2).
¶ 20 The history of 64 O.S. 2001, § 51[64-51] also supports this position. In 1994, Section 51(B)(3) provided that "[n]o investment of the permanent common school and other educational funds shall be made in indebtedness or currency of any foreign country or in securities issued by any corporation which is domiciled outside of the United States of America." Id. That statute provided that "[t]he permanent common school funds, other educational funds and public building funds may be invested in securities including but not limited to stocks and other equities issued by corporations domiciled in the United States which have investment grade ratings as determined by at least one of the major rating agencies." Id. In 1999, this provision was amended by 1999 Okla. Sess. Laws ch. 116, § 1 to read as follows:
 B. 2. The permanent school fund and other educational funds may only be invested in bonds issued in the United States and United States dollar denominated or other investments settled in United States dollars or traded on the United States exchange markets.
Id.
¶ 21 The apparent purpose of the amendment was to allow for investments in those corporations domiciled in places other than the United States which settled in United States dollars or traded on the United States exchange market, not to provide for broad investments which are unrelated to securities, such as timberland or real estate.
¶ 22 The Legislature has not enacted legislation authorizing the Commissioners to invest in timberland or other real estate. As investments of permanent school funds are required to be authorized by law, the Commissioners may not use the permanent school fund to purchase timberland or other real estate.
 IV. Conclusion
¶ 23 The primary purpose of the School Land Trust is to produce income for the benefit of common schools and other beneficiaries in Oklahoma. Nigh, 642 P.2d at 237. The Commissioners of the Land Office as trustees are to "prudently exercise their duty to maintain the maximum return to the trust estate from the trust properties under their control." Id. at 239. The purpose of the school land trust is limited by the Oklahoma Enabling Act to those investments which obtain the maximum benefit in return from the use of the trust property and by the Oklahoma Constitution to those investments which are authorized by the Legislature. Whether investing in timberland or other real estate would meet this high burden of maximizing returns is a question of fact outside the realm of an Attorney General Opinion. 74 O.S. 2001,§ 18b[74-18b] (A)(5). Furthermore, the Legislature has not enacted legislation authorizing the purchase of timberland or other real estate.
¶ 24 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Section 7 of the 1906 Oklahoma Enabling Act, ch. 3335,34 Stat. 267, 272, provides for the grant of certain lands and anappropriation of five million dollars to be held and invested bythe State, in trust, for the use and benefit of its publicschools. The Commissioners of the Land Office serve as trusteesof the trust property and are required to manage the sacred trustestate for the exclusive benefit of the beneficiaries and to makeinvestments which return full value for the use and dispositionof the trust property. Okla. Const. art. VI, § 32(A); Okla.Educ. Ass'n v. Nigh, 642 P.2d 230, 236 (Okla. 1982). Allinvestments must meet the high burden of obtaining the maximumreturn from the use of trust property. Id. at 239. Whetherthe purchase of timberland or other real estate could fulfill thepurpose of obtaining the maximum return to the trust estate is aquestion of fact, which cannot be answered by an Attorney GeneralOpinion. 74 O.S. 2001, § 18b(A)(5).
 2. Article XI, § 6(A) of the Oklahoma Constitution providesthat the permanent school fund may be invested in farm land and"other investments as authorized by law" and provides that theLegislature shall "provide by law conditions upon which thepermanent common school fund, other educational funds and publicbuilding funds may be loaned or invested." Okla. Const. art. XI,§ 6(C).
 3. The Legislature has provided at 64 O.S. 2001, §51(A)(1) that the Commissioners of the Land Office may investin mortgages on farm lands and "bonds issued in the United Statesand United States dollar denominated or other investments settledin United States dollars or traded on the United States exchangemarkets." Id. § 51(B)(2). Applying the doctrine of ejusdemgeneris, timberland and other real estate do not fall withinthe definition of "other investments settled in United Statesdollars." Id.
 4. No provision in the Oklahoma statutes or Constitutionauthorizes the Commissioners of the Land Office to purchasetimberland or other real estate. Investments are required byOkla. Const. art. XI, § 6(A) to be authorized by law. TheCommissioners of the Land Office may not purchase timberland orother real estate with permanent school funds.
W.A. DREW EDMONDSON Attorney General Of Oklahoma
SANDRA D. HOWARD Senior Assistant Attorney General
[1] In 1975 an amendment substituted "Lieutenant Governor" for "Secretary of State." 1975 Okla. Sess. Laws S.J.Res. No. 37, Sec. 1, § 32. This amendment became effective on January 8, 1979.Id. S.J. Res. No. 37, Sec. 3.
[2] Although the Oklahoma Supreme Court found in Wall,232 P.2d at 944 that the Commissioners had the power, without express legislative authority, to appraise State lands in order to arrive at a reasonable rental rate, this was so because appraisal was a "necessary incident" to the management, leasing and disposal of the land. The same cannot be said for the purchase of timberland or other real estate.